# IN THE SUPREME COURT OF IOWA

No. 12–2270

Filed February 13, 2015

**STATE OF IOWA,**

Appellee,

vs.

**DEMETRICE DE'ANGELO TOMPKINS,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Joseph Moothart, Judge.

Defendant appeals his conviction for domestic abuse assault causing bodily injury pursuant to Iowa Code section 708.2A(2)(*b*), claiming ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Jeremy Westendorf, Assistant County Attorney, for appellee.

**ZAGER, Justice.**

Demetrice Tompkins was convicted after a jury trial of domestic abuse assault causing bodily injury pursuant to Iowa Code section 708.2A(2)(*b*) (2011). He appeals his conviction, maintaining he received ineffective assistance of trial counsel on two grounds. First, he maintains counsel was ineffective in failing to object to an officer's testimony regarding the complaining witness's out-of-court statements under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Second, he maintains counsel was ineffective in failing to object to and move to strike as hearsay the officer's unsolicited testimony regarding another witness's out-of-court statement. Finally, he maintains the cumulative effect of counsel's alleged deficiencies caused him prejudice.

Upon our de novo review, we conclude trial counsel was not ineffective in failing to object on Confrontation Clause grounds to the officer's testimony regarding the complaining witness's out-of-court statements. Further, we conclude the record before us is insufficient to determine whether trial counsel should have objected to and moved to strike as hearsay the officer's unsolicited testimony regarding the other witness's out-of-court statement. We vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. Background Facts and Proceedings.

In June 2012, Tompkins and A.H. were in a relationship and living together in an apartment in Waterloo, Iowa. At approximately 12:26 a.m. on June 18, Officer Kyle Jurgensen of the Waterloo Police Department was dispatched to the couple's apartment complex for a domestic dispute. This was in response to a 911 call made by a neighbor who reported that A.H. told her Tompkins assaulted her and requested that

the neighbor call 911. Upon arrival, Officer Jurgensen found the couple in front of the apartment complex. Approximately four to five other people were also present. Tompkins was demonstrably upset and yelling "[homophobic] derogatory slang [and] curse words" at A.H.

Officer Jurgensen separated the parties and attempted to calm Tompkins down and determine what was going on. During this conversation, Tompkins informed Officer Jurgensen that earlier that night "he had caught [A.H.] cheating with another female." He further informed Officer Jurgensen he was "done with the relationship" and had come to the apartment that night to "grab his stuff." During their conversation, Officer Jurgensen observed that Tompkins smelled like alcohol and was slurring his speech. Additionally, Tompkins continued to intermittently yell disparaging remarks at A.H. from a distance. After approximately twenty to twenty-five minutes, Officer Jurgensen placed Tompkins in the back of his police car. From that location, Tompkins continued to yell disparaging remarks at A.H.

Officer Jurgensen then turned his attention to A.H. and asked her what had happened that night. A.H. told Officer Jurgensen she and Tompkins were "arguing in front of the [apartment] complex and he had pushed her down on the concrete during the argument." Officer Jurgensen also spoke with one other witness who stated that "[Tompkins] had pushed [A.H.]." According to Officer Jurgensen, this other witness was noticeably intoxicated and uncooperative. Officer Jurgensen also observed injuries on A.H., which included fresh scrapes on her left elbow and left knee. A.H.'s glasses were also broken. Officer Jurgensen noted that A.H.'s injuries were consistent with a fall on concrete, as described by A.H.

Officer Jurgensen then left the scene with Tompkins. En route to the county jail, Tompkins was upset and verbally abusive towards Officer Jurgensen. Tompkins denied pushing A.H., claiming A.H. "did those injuries to herself by hitting a window." After arriving at the jail, Tompkins attempted to negotiate with Officer Jurgensen, saying he would "[take] . . . a breath test if [Officer Jurgensen] didn't charge him with domestic assault." Officer Jurgensen declined this offer, and Tompkins refused to take a breath test.

As a result of the above incident, the district court entered a no-contact order against Tompkins barring him from having any contact with A.H. Later that day, A.H. submitted a letter to the district court requesting it lift the no-contact order. In the letter, A.H. claimed Tompkins "never put his hands on [her] and . . . helps [her] with bills, food, [and] gas expense[s]." The letter further stated that on the night of the incident the couple had been "drinking and got into an argument outside of [their] apartment and one of the neighbors had called the cops." A.H. also claimed that when she was attempting to enter the apartment she "tripped and fell on the stairs."

On July 9, the district court lifted the no-contact order. Also on July 9, the State formally charged Tompkins with domestic abuse assault causing bodily injury in violation of Iowa Code section 708.2A(2)(*b*).[1] Counsel was appointed to represent Tompkins on the charge, and Tompkins entered a plea of not guilty.

Based on the letter A.H. had presented to the district court, A.H. appeared to recant the version of events she relayed to Officer Jurgensen

---

[1]The State also charged Tompkins with public intoxication, second offense, in violation of Iowa Code sections 123.46(2) and 123.91(1). However, prior to trial Tompkins pled guilty to this charge. Tompkins does not challenge the public intoxication conviction on appeal.

the night of the incident. In light of this recantation, Tompkins filed a motion in limine requesting that the court preclude the State from calling A.H. as a witness. Specifically, the motion contended that the State intended to violate the principles established in *State v. Turecek*, 456 N.W.2d 219, 225 (Iowa 1990). That is, Tompkins believed the State would call A.H. in an effort to present inadmissible hearsay, her prior statements, to the jury under the guise of impeachment.

On the morning of trial, by way of an oral ruling, the district court partially granted Tompkins's motion in limine regarding the *Turecek* issue. The State confirmed that it did not intend to call A.H. for the sole purpose of impeaching her, but rather only to establish a domestic relationship between her and Tompkins. Accordingly, the district court barred the State from eliciting additional information from A.H. about the incident without first alerting the court and defense counsel so it could hold a hearing outside of the presence of the jury.

At trial, the State called A.H. as its first witness to establish a domestic relationship between her and Tompkins. Consistent with the district court's ruling, the State did not elicit any additional evidence from A.H. Following this questioning, Tompkins did not cross-examine A.H. However, A.H. remained subject to the State's subpoena, and the State admonished her to remain within five minutes of the courthouse at all times until the close of evidence "for the possibility that she would be called by either the State or the defense."

The State next called Officer Jurgensen to testify. Officer Jurgensen testified in detail to his investigation of the incident and his own observations as discussed above. After this preliminary testimony, in reference to his conversation with A.H., the State then asked Officer Jurgensen, "And what did she say?" This question drew an objection

from defense counsel on hearsay grounds. The district court initially sustained the objection. However, after the State set forth additional foundational evidence, the district court overruled the hearsay objection and allowed the State to proceed under the excited utterance exception.[2] Officer Jurgensen then testified that A.H. told him "that her and her boyfriend were arguing in front of the complex and he had pushed her down on the concrete during the argument." Officer Jurgensen also testified that A.H. told him that is how she sustained her injuries. Defense counsel made no additional objection to this testimony.

On cross-examination, defense counsel asked Officer Jurgensen if it was possible that one of the other four to five people present could have been responsible for A.H.'s injuries. Officer Jurgensen responded that it was not possible. Specifically, he stated, "I had one person there tell me [Tompkins] had pushed [A.H.], but due to [that person's] intoxication level and her unwillingness to cooperate with police, she wasn't mentioned in any reports." Counsel did not object to or move to strike from the record this statement on hearsay grounds.

After the above testimony by Officer Jurgensen, Tompkins's counsel did not ask the State to recall A.H. or attempt to have A.H. testify on behalf of Tompkins. Counsel presented no defense.

On October 24, the jury returned a verdict of guilty. Tompkins appealed, and we transferred the case to the court of appeals. The court of appeals rejected Tompkins's ineffective-assistance-of-counsel claims and affirmed his conviction. The court of appeals concluded trial counsel had not breached an essential duty in failing to object on Confrontation

---

[2]The district court weighed the factors outlined by this court in *State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999), and concluded A.H.'s statements were admissible under the excited utterance exception to the hearsay rule, Iowa R. Evid. 5.803(2). Tompkins has not challenged this ruling on appeal.

Clause grounds to Officer Jurgensen's testimony regarding A.H.'s out-of-court statements. Specifically, the court of appeals reasoned that a Confrontation Clause objection would have been meritless because A.H. had been present at trial and available for cross-examination. Further, the court of appeals concluded counsel had not breached an essential duty in failing to object to and move to strike as hearsay Officer Jurgensen's testimony regarding the other witness's out-of-court statement. In this latter respect, the court of appeals also concluded that even if counsel's failure breached an essential duty, Tompkins had not suffered prejudice as a result of counsel's deficiency.

Tompkins applied for further review, which we granted.

## II.  Standard of Review.

We review ineffective-assistance-of-counsel claims de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). This is because such claims are grounded in the Sixth Amendment to the United States Constitution.[3] *Id.* In a criminal case, an ineffective-assistance-of-counsel claim "need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes." Iowa Code § 814.7(1). However, a defendant may raise such a claim on direct appeal if they have "reasonable grounds to believe that the record is adequate to address the claim on direct appeal." *Id.* § 814.7(2). Ordinarily, we preserve such claims for postconviction relief proceedings. *Clay*, 824 N.W.2d at 494. "We prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel

---

[3]In his brief, Tompkins cites both the Sixth Amendment and article I, section 10 of the Iowa Constitution in support of his ineffective-assistance-of-counsel claims. Tompkins does not argue that we should interpret article I, section 10 differently than the parallel provisions of the Sixth Amendment. Thus, for purposes of our analysis we assume that the legal principles governing both provisions are the same. *See Simmons v. State Pub. Defender*, 791 N.W.2d 69, 76 n.3 (Iowa 2010).

can defend against the charge." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). This is especially appropriate when the challenged actions concern trial strategy or tactics counsel could explain if a record were fully developed to address those issues. *Clay*, 824 N.W.2d at 494. "We will resolve the claims on direct appeal only when the record is adequate." *Id.* However, it is a rare case in which the trial record alone is sufficient to resolve a claim on direct appeal. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

We determine the record is adequate in this case to reach the merits of Tompkins's claim that counsel was ineffective in failing to object on Confrontation Clause grounds to Officer Jurgensen's testimony regarding A.H.'s out-of-court statements. However, we determine the record is insufficient to determine whether counsel should have objected to and moved to strike as hearsay Officer Jurgensen's unsolicited testimony regarding the other witness's out-of-court statement.

### III. Discussion.

To succeed on a claim of ineffective assistance of counsel, a claimant must establish by a preponderance of the evidence: " '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.' " *State v. Adams*, 810 N.W.2d 365, 372 (Iowa 2012) (quoting *Straw*, 709 N.W.2d at 133); *accord Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984). Reversal is warranted only where a showing of both of these elements is made. *Simmons v. State Pub. Defender*, 791 N.W.2d 69, 75–76 (Iowa 2010). If we conclude a claimant has failed to meet his or her burden as it relates to either prong, we need not decide whether the claimant has satisfied his or her burden as it relates to the remaining prong. *See Clay*, 824 N.W.2d at 501 n.2 ("The court always has the

option to decide the claim on the prejudice prong of the *Strickland* test, without deciding whether the attorney performed deficiently.").

Under the first prong, " 'we measure counsel's performance against the standard of a reasonably competent practitioner.' " *Id.* at 495 (quoting *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008)). It is presumed the attorney performed his or her duties competently, and the claimant must successfully rebut this presumption by establishing by a preponderance of the evidence that counsel failed to perform an essential duty. *Id.* We assess counsel's performance "objectively by determining whether [it] was reasonable, under prevailing professional norms, considering all the circumstances." *State v. Lyman*, 776 N.W.2d 865, 878 (Iowa 2010). Further, where a claimant alleges counsel's failure to pursue a particular course breached an essential duty, there is no such duty when the suggested course would have been meritless. *See State v. Musser*, 721 N.W.2d 734, 754 (Iowa 2006) (holding counsel did not breach an essential duty when "an objection under the Confrontation Clause would have had no merit"); *State v. Button*, 622 N.W.2d 480, 485 (Iowa 2001) ("Because [defendant's] argument has no merit, his counsel was not ineffective for failing to make this challenge.").

Under the second prong, the claimant must establish that prejudice resulted from counsel's failure to perform an essential duty. *Clay*, 824 N.W.2d at 496. Prejudice exists where the claimant proves " 'a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bowman v. State*, 710 N.W.2d 200, 203 (Iowa 2006) (quoting *State v. Hopkins*, 576 N.W.2d 374, 378 (Iowa 1998)). The claimant must prove prejudice by a preponderance of the evidence. *Clay*, 824 N.W.2d at 496. A claimant need not establish it is more likely than not that counsel's deficient

conduct altered the outcome in the case. *Id.* Instead, a claimant need only show " 'that the probability of a different result is sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Maxwell,* 743 N.W.2d at 196). "In determining whether this standard has been met, we must consider the totality of the evidence, what factual findings would have been affected by counsel's errors, and whether the effect was pervasive or isolated and trivial." *State v. Graves,* 668 N.W.2d 860, 882–83 (Iowa 2003).

With these principles in mind, we turn now to address Tompkins's allegations concerning his trial counsel's ineffective performance.

**A. Whether Trial Counsel Was Ineffective in Failing to Object on Confrontation Clause Grounds to Officer Jurgensen's Testimony Regarding A.H.'s Out-of-Court Statements.** Tompkins claims his trial counsel breached an essential duty in failing to object on Confrontation Clause grounds to A.H.'s out-of-court statements offered through Officer Jurgensen during the State's case. Tompkins relies on *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and several other recent United States Supreme Court decisions for authority that the State's presentation of A.H.'s hearsay statements violated the Confrontation Clause of the Sixth Amendment to the United States Constitution.

In 1980, the Supreme Court held that a determination of whether a witness's hearsay statement admitted pursuant to various common law exceptions to the hearsay rule violated the Confrontation Clause turned on whether such evidence contained sufficient " 'indicia of reliability.' " *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S. Ct. 2531, 2539, 65 L. Ed. 2d 597, 608 (1980) ("[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a

showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' "), *overruled by Crawford*, 541 U.S. at 68–69, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203; *see also State v. Shipley*, 757 N.W.2d 228, 235 (Iowa 2008). However, in 2004 the U.S. Supreme Court, in *Crawford*, revised the test for the admission of hearsay statements challenged under the Confrontation Clause. 541 U.S. at 68–69, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."). Rather than focusing on indicia of reliability, it stated the inquiry should instead turn on what it identified as the "principal evil" the Confrontation Clause was intended to protect against: inquisitorial *ex parte* examinations by government officials. *Id.* at 61, 124 S. Ct. at 1370, 158 L. Ed. 2d at 199. As held by the Supreme Court, admission of such statements does not turn on notions of reliability. *Id.* at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192–93. Instead, the court held that where such statements are "testimonial," they are admissible in subsequent proceedings only if: (1) the declarant is unavailable and (2) there has been a prior opportunity for cross-examination. *Id.* at 61, 124 S. Ct. at 1370, 158 L. Ed. 2d at 198.

But first, we must determine whether the Confrontation Clause is even implicated under the unique procedural facts presented here. We begin by considering whether Tompkins's motion in limine based on *Turecek* precluded him from cross-examining A.H. We conclude that Tompkins's motion in limine based on *Turecek* did not preclude him from cross-examining A.H.

After A.H. wrote her letter to the district court effectively recanting her previous statements, Tompkins's counsel made the tactical decision to file a motion in limine based on *Turecek*. *Turecek* states:

> The State is not entitled under rule [5.]607 to place a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, *offer evidence which is otherwise inadmissible*. To permit such bootstrapping frustrates the intended application of the exclusionary rules which rendered such evidence inadmissible on the State's case in chief.

456 N.W.2d at 225 (emphasis added).

In its preliminary ruling, the district court granted the motion in limine. When the State later attempted to elicit A.H.'s hearsay statements through Officer Jurgensen, the district court initially sustained Tompkins's hearsay objection. However, after several attempts by the State to lay a proper foundation for the admission of A.H.'s hearsay statements, the district court ultimately ruled the statements were admissible as excited utterances.[4] *See* Iowa R. Evid. 5.803(2); *see also State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999) (setting forth criteria for determining when a statement is an excited utterance). When a witness's hearsay statement is admissible to prove the truth of the matter asserted, there is no *Turecek* violation. *See State v. Rojas*, 524 N.W.2d 659, 662 (Iowa 1994) ("There is no *Turecek* violation here because we find the videotape was admissible under rule [5.]803(24)."). *Turecek* is a rule that prevents parties from unfairly *circumventing* the hearsay rule. *See* 456 N.W.2d at 225. Thus, once the State laid the proper foundation for the admission of A.H.'s hearsay statements under the excited utterance exception to the hearsay rule, they were admissible

---

[4]Again, Tompkins has not appealed the district court's ruling with respect to the admission of A.H.'s hearsay statements as excited utterances.

as evidence of the fact that Tompkins pushed her, and *Turecek* no longer applied.

We now turn to consider whether counsel breached an essential duty in failing to object to the admission of A.H.'s hearsay statements on Confrontation Clause grounds. We begin by considering whether an objection on Confrontation Clause grounds would have been meritless. We conclude that an objection on Confrontation Clause grounds would have been meritless.

Tompkins maintains that although A.H. testified at trial, the State limited its questioning of A.H. to establishing a domestic relationship between Tompkins and A.H. Thus, because Iowa Rule of Evidence 5.611(*b*) limits the scope of cross-examination to matters raised on direct examination, Tompkins was effectively unable to cross-examine A.H. regarding her prior statements to Officer Jurgensen at that time. Tompkins further asserts that he could not recall A.H. to confront her on her hearsay statements because he was placed in a constitutionally impermissible catch-22: forego either his Confrontation Clause rights or his right to have the State prove its case against him.

"[T]he Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court." *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S. Ct. 2527, 2540, 174 L. Ed. 2d 314, 330 (2009). Notwithstanding this obligation, the general rule is that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9, 124 S. Ct. at 1369 n.9, 158 L. Ed. 2d at 198 n.9. "[T]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is

effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 842, 98 L. Ed. 2d 951, 957 (1988) (internal quotation marks omitted).

We agree with Tompkins that the State's decision not to question A.H. about the statements she made to Officer Jurgensen, or the events surrounding the night in question, placed Tompkins in the unenviable position to weigh the advantages and disadvantages of cross-examining A.H. during her initial testimony or calling her as a witness for the defense. However, Tompkins's Confrontation Clause rights were not violated based on this choice. The choice whether and to what extent to cross-examine a witness always requires a cost-benefit analysis. But where the witness takes the stand and is available for cross-examination, the Confrontation Clause places no constraints on the use of the witness's prior testimonial hearsay statement. *Crawford*, 541 U.S. at 59 n.9, 124 S. Ct. at 1369 n.9, 158 L. Ed. 2d at 198 n.9.

In this case, A.H. was placed under oath and made available for cross-examination. Further, the record established that even after the court initially dismissed A.H. from the witness stand, she remained under the State's subpoena and near the courthouse at all times until the close of evidence. Tompkins could have cross-examined A.H. during her initial testimony. *See* Iowa R. Evid. 5.611(*b*) ("Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. *The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.*" (Emphasis added.)). More importantly, after the court admitted A.H.'s hearsay statements into evidence through Officer Jurgensen, Tompkins could have recalled her during his case-in-chief. *See* Iowa R. Evid. 5.806 ("When a hearsay statement . . . has been

admitted in evidence, the credibility of the declarant may be attacked . . . by any evidence which would be admissible for those purposes if declarant had testified as a witness. . . . *If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.*" (Emphasis added.)). Tompkins chose not do so, and we cannot conclude that this apparently tactical decision deprived him of the opportunity to confront A.H.

Further, the majority of courts from other jurisdictions that have addressed this issue have reached similar conclusions, although there are several outliers. *See, e.g., United States v. Butterworth*, 511 F.3d 71, 75–76 (1st Cir. 2007) ("Alexander was present at trial and was available for cross-examination for the defense. . . . This is not a case where the defense has a legitimate claim of surprise. Nor did the defense ask that Alexander be recalled when the grand jury testimony itself was offered." (Citation omitted.)); *United States v. Cree*, 778 F.2d 474, 478 (8th Cir. 1985) ("We decline to hold that a defendant's right of confrontation mandates that the prosecution call to the stand a person who is available to be called by either side simply because cross-examination of that person may be favorable to the defense."); *People v. Rodriguez*, 319 P.3d 151, 197 (Cal. 2014) (finding no Confrontation Clause violation when the prosecution introduced a girl's hearsay statement through an expert, but the defendant had the opportunity to and did call her as his own witness); *State v. Davis*, 951 A.2d 31, 38 (Conn. App. Ct. 2008) ("Although the victim was called to testify before the state introduced his challenged testimonial statements during its later direct examination of [the officer], the defendant could have attempted to recall the victim as a witness. The defendant did not do so. Because the record does not

reflect either that the defendant sought to conduct further cross-examination of the victim after [the officer] testified or that the court in any way restricted the defendant's rights to cross-examine the victim we conclude that his claim must fail . . . ." (Citations omitted.)); *McKnight v. State*, 656 S.E.2d 830, 832 (Ga. 2008) ("[S]he had already testified at trial and remained subject to recall. Therefore, . . . *Crawford* is not applicable to this case."); *State v. Rossignol*, 215 P.3d 538, 547–48 (Idaho Ct. App. 2009) (finding no Confrontation Clause violation when the district court offered the defendant the opportunity to recall the victim after the transcript of her interview was admitted into evidence); *State v. Rickett*, 967 A.2d 671, 676 (Me. 2009) (finding no Confrontation Clause violation where witness appeared at trial and testified for defense); *Smith v. State*, 984 So. 2d 295, 303 (Miss. Ct. App. 2007) ("Since Mr. Clark testified during the trial, *Crawford v. Washington* does not apply . . . ."); *Williams v. State*, 970 So. 2d 727, 734 (Miss. Ct. App. 2007) ("[W]e cannot find that Williams was unduly prejudiced because Williams cross-examined Jane later during the trial and even called Jane during his case-in-chief."); *State v. Perez*, 920 N.E.2d 104, 128 (Ohio 2009) ("[Defendant] cites no authority for his contention that the Confrontation Clause requires such a statement to be introduced *during* the testimony of the declarant."); *State v. Pollock*, 284 P.3d 1222, 1224 (Or. Ct. App. 2012) ("Defendant also chose not to recall the victim for cross-examination although he could have after the prosecutor played the DVD."); *State v. Stokes*, 673 S.E.2d 434, 440 (S.C. 2009) ("[I]t is the opportunity to cross-examine that is constitutionally protected. In the instant case, appellant had that opportunity. It is undisputed Brown appeared at trial, was available for cross-examination, and could have been recalled after the statement was admitted." (Emphasis omitted.)); *State v. Hoch*, 18 A.3d

562, 565 (Vt. 2011) (finding no Confrontation Clause violation despite witness having "testified prior to the admission of the videotape" because "defendant was entirely free to recall her to the stand for cross-examination"); *State v. Nelis*, 733 N.W.2d 619, 628 (Wis. 2007) (finding no Confrontation Clause violation when officer testified to prior inconsistent statements of another witness because witness had already testified and it had not been shown witness was unavailable for recall). *But see, e.g., State v. Rohrich*, 939 P.2d 697, 700–01 (Wash. 1997) (en banc) (holding the Confrontation Clause "requires the State to elicit the damaging testimony from the witness so the defendant may cross examine if he so chooses" and noting that "[t]he State's failure to adequately draw out testimony from [a witness] before admitting the [witness's] hearsay [statement] puts the defendant in 'a constitutionally impermissible Catch–22' of calling the child for direct or waiving his confrontation rights" (quoting *Lowery v. Collins*, 996 F.2d 770, 772 (5th Cir. 1993)).

There was no Confrontation Clause violation in this case. Once the district court admitted Officer Jurgensen's testimony regarding A.H.'s out-of-court statements, the issue became whether counsel should have either requested that the State recall A.H. so she could be cross-examined or recalled her during the defense case-in-chief. That issue has not been raised in this appeal, and we do not decide it. However, nothing in our opinion precludes Tompkins from raising it in subsequent postconviction relief proceedings.

**B. Whether Trial Counsel Was Ineffective in Failing to Object to and Move to Strike as Hearsay Officer Jurgensen's Testimony Regarding the Other Witness's Out-of-Court Statement.** Tompkins also contends counsel was ineffective in failing to object to and move to

strike as hearsay Officer Jurgensen's testimony regarding the other witness's out-of-court statement that she saw Tompkins push A.H. during the incident. In contrast, the State argues counsel had no duty to object to this statement because the State did not offer it to prove the truth of the matter asserted and therefore it was not hearsay. Instead, the State maintains the offered statement only explains Officer Jurgensen's investigation and why it did not call the witness at trial.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(*c*). However, "[w]hen an out-of-court statement is offered, not to show the truth of the matter asserted but to explain responsive conduct, it is not regarded as hearsay." *State v. Mitchell*, 450 N.W.2d 828, 832 (Iowa 1990). As we explained in *State v. Elliott*, in the context of police investigations,

> "In criminal cases, the arresting or investigating officer will often explain his going to the scene of the crime or his interview with the defendant, or a search or seizure, by stating that he did so upon information received and this of course will not be objectionable as hearsay, but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded as hearsay."

806 N.W.2d 660, 668 (Iowa 2011) (quoting *State v. Doughty*, 359 N.W.2d 439, 442 (Iowa 1984)) (internal quotation marks omitted).

In this case, the following exchange occurred on cross-examination:

> Q. Officer Jurgensen, when you arrived at the scene . . . were the only two people present Mr. Tompkins and [A.H.]? A. No.
>
> . . . .

Q. And there were four or five other people there? A. Yes.

Q. So it is possible that those injuries could have been inflicted by any one of those people? A. No.

Q. It's not possible? A. No. I had one person there tell me that he had pushed her, but due to her intoxication level and her unwillingness to cooperate with police, she wasn't mentioned in any reports or anything[.]

Here, Officer Jurgensen went beyond the mere fact that a conversation occurred and instead actually stated what the witness said. His testimony did not merely explain the investigation or why the State did not call the other witness to testify, as the State contends. Rather, by repeating the other witness's statement he directly challenged counsel's assertion that someone else at the scene could have pushed A.H. This testimony was hearsay and an objection would have been appropriate along with a request to have the statement striken from the record. *See Milks v. Iowa Oto-Head & Neck Specialists, P.C.*, 519 N.W.2d 801, 806 (Iowa 1994) ("If the grounds for the objection are disclosed only after the testimony is given, the proper procedure is to move to strike and have the jury admonished to disregard the objectionable statement.").

Having concluded Tompkins's counsel could have objected to this statement as hearsay, we must next determine whether counsel's failure to object fell below the standard of a reasonably competent practitioner, such that counsel failed to perform an essential duty. In this case, we do not know whether, under the circumstances, counsel's failure to object to these statements was a trial tactic or strategy. *See Clay*, 824 N.W.2d at 500–01 (concluding record was insufficient to resolve ineffective-assistance-of-counsel claim on direct appeal when record was not developed as to trial counsel's state of mind with respect to counsel's failure to object to several out-of-court statements); *see also State v.*

*Rubino*, 602 N.W.2d 558, 563 (Iowa 1999) ("Ordinarily claims of ineffective assistance of counsel are preserved for postconviction relief. That is particularly true where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues." (Citation omitted.)). Thus, at this time, the record before us is insufficient to address this issue.

### IV. Conclusion.

We conclude trial counsel was not ineffective in failing to object on Confrontation Clause grounds to Officer Jurgensen's testimony regarding A.H.'s out-of-court statements. Further, we conclude the record before us is insufficient to determine whether trial counsel should have objected to and moved to strike as hearsay the unsolicited testimony of Officer Jurgensen regarding the other witness's out-of-court statement. We vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**