# IN THE COURT OF APPEALS OF IOWA

No. 16-2172
Filed December 20, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NICHOLAS ANDREW LENZ,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Mitchell County, Christopher C. Foy, Judge.


        Nicholas Lenz appeals his conviction of first-degree kidnapping. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

        Nicholas A. Lenz, Fort Madison, pro se.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


        Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Nicholas Lenz appeals his conviction of first-degree kidnapping. His various arguments on appeal include: (1) the district court improperly disallowed questioning of the victim about her drug use at or around the time of the crime or, alternatively, his trial counsel was ineffective for failing to argue such evidence was admissible under the inexplicably-intertwined doctrine; (2) the court erred in allowing irrelevant and prejudicial information regarding whether a sheriff's deputy thought Lenz could have shot him at the time of his arrest; (3) the statute defining serious injury, Iowa Code section 702.18 (2016), is unconstitutionally vague; (4) the evidence was insufficient to support a necessary element of the crime, that the victim suffered a serious injury or, alternatively, that any serious injury was not a result of confinement; (5) the court erred in failing to give certain jury instructions; and (6) the jury's general verdict makes it unclear whether he was convicted on a valid or invalid basis thus warranting a new trial. Lenz also argues his trial counsel was ineffective in failing to raise arguments three and six at trial.[1]

---

[1] Lenz also requests this court to conduct an in-camera review of the notes taken by a special agent of the Iowa Division of Criminal Investigation in relation to witness depositions in order to ensure the propriety of the district court's determination that the notes did not contain exculpatory information and were therefore not discoverable. The discovery tool Lenz attempts to employ applies only to "statements." *State v. DeZeeuw*, 401 N.W.2d 226, 227 (Iowa Ct. App. 1986) (quoting *State v. Groscost*, 355 N.W.2d 32, 34 (Iowa 1984)). Our supreme court has stated:

> In order for statements to be subject to [discovery], which we have approved, it is necessary that they be written statements made by the witness and signed, or otherwise adopted or approved by the witness, or that they be a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously without the making of such oral statement. The distinction between a statement made by a witness and one that is an imprecise summary of

## I.    Background Facts & Proceedings

Lenz was in a romantic relationship with Chris Sonberg in the early months of 2016; the two were dating at the time but the relationship was "not good." On the afternoon of March 5 of that year, Lenz and Sonberg travelled from Mitchell, Iowa to Waterloo to visit a casino. They spent "two hours or longer" at the casino. After their departure from the casino, an argument ensued between the two in the vehicle Lenz was driving back to Mitchell. Lenz began yelling at Sonberg and eventually struck her with his fists several times in her face, which caused her to lose consciousness—she was in-and-out of consciousness for the remainder of their journey. When they arrived at Sonberg's home in Mitchell, Lenz put a cigarette out on her right cheek and then dragged her by her hair from the car into the house while covering her mouth so she could not scream.

For the next couple of days, they remained in Sonberg's home, wherein Chris was "beaten a lot" by Lenz. He hit her numerous times in her head and

---

what another understood the witness to say has been made on the federal level as well as in Iowa.

*State v. Horn*, 828 N.W.2d 717, 721 (Iowa 1979). Upon a review of the documents requested, we conclude they are not "statements" and therefore affirm the district court's conclusion that they were not discoverable materials.

Finally, Lenz argues the district court incorrectly applied Iowa Code section 702.18 in instructing the jury and trial counsel was ineffective in failing to object to the instruction. To the extent Lenz argues the district court failed to define the terms "protracted" or "extended" to the jury, he provides us with no authority that such a specific definitional instruction to the jury is required. We therefore deem the argument waived. *See* Iowa R. App. P. 6.903(2)(g)(3). To the extent Lenz argues the district court's use of the term "extended" rather than "protracted" in its instruction was improper, we note we have previously approved the language used by the district court and affirm its use of the same. *See, e.g.*, *State v. Edwards*, No. 10-0754, 2011 WL 1878600, at *1 (Iowa Ct. App. May 11, 2011); *State v. Billingsly*, No. 03-1165, 2004 WL 1259726, at *2 (Iowa Ct. App. June 9, 2004); *see also Protract*, Webster's Third New International Dictionary 1826 (unabridged ed. 2002) (listing the term "extend" as a synonym for the term "protract").

face and strangled her to a point that she testified she thought she was going to die. Lenz also threatened Sonberg with the display of a firearm on multiple occasions, hit her "upside the head" with it, and pressed its muzzle against her flesh. At one point, when Sonberg tried to escape, Lenz chased her outside, slammed her to the ground, kicked her in her ribs and head, and dragged her by her hair back into the residence. Lenz eventually transported Sonberg to an abandoned camper where he zip tied her ankles to a pipe under the stove and then left her there for approximately four hours, during which Sonberg was without food, water, and heat and experienced a loss of feeling in her feet as a result of the tightness of the zip ties. Lenz subsequently transported Sonberg back to her home, where he continued to confine her.

In the early morning hours of March 7, Sonberg's father visited her home and noticed one of the home's windows was open. He notified law enforcement of a possible break-in at the residence, and a Mitchell County Sheriff's Deputy responded shortly thereafter. When the deputy entered the residence with Sonberg's father, he observed Lenz sleeping on a couch in the living room. The deputy approached Lenz and handcuffed him. Sonberg was located in the bedroom of the residence. The deputy observed that she had facial injuries and Sonberg advised Lenz "beat her up." The deputy removed Lenz from the home and secured him in his police vehicle. Lenz managed to escape the vehicle, however, and fled the scene. Following a foot chase, Lenz stole a car to aid him in his escape, but he was recaptured by authorities. Sonberg was transported to a nearby hospital in an ambulance. She was then life-flighted to Mayo Clinic in Rochester, Minnesota for treatment.

On March 8, Lenz was interviewed by police officers.[2] At the outset of the interview, Lenz requested the officers to tell Sonberg he was sorry for what he did; he repeated his sorrow for his actions a number of times throughout the interview. He stated Sonberg wanted to go to Waterloo for drugs, and when they got there, they smoked about $200 worth of crack. On their way back to Mitchell from Waterloo, Lenz said he became upset with Sonberg and he "couldn't take it anymore." An argument ensued, during which Sonberg rolled down her window in an attempt to "wave somebody down," presumably for a ride. Lenz stated he grabbed her by the ponytail, "threw her down," and rolled up and locked the windows. He indicated he subdued her for the remainder of the journey back to Mitchell. At one point, Lenz said Sonberg "was really starting to piss [Lenz] off, so" he punched her "like ten times in her back." Upon their arrival in Mitchell, Lenz admitted he dragged Sonberg into the house, after which he "beat the fuck out of her for like two days straight." Lenz thought the beatings "might have broke[n] some of her ribs and might have broke[n] her jaw too." Lenz said he eventually decided to transport Sonberg to a camper near his grandparents' home. Lenz stated, in transit, he "just snapped" and "repetitively . . . hit [Sonberg] on her left side of her jaw" and "also in her ribs too." While in the camper, Lenz admitted he zip tied Sonberg's legs to a pipe so she would not "do anything stupid." Lenz and Sonberg left the camper, and Lenz went on a bit of a crime spree. He subsequently transported Sonberg back to her residence and remained there with her. Lenz also admitted that he, at one point, taped Sonberg

---

[2] An audio recording of this interview was admitted into evidence and played for the jury.

to a chair in her home. Also, when searching Sonberg's purse, Lenz found a condom; he removed it from the wrapper and shoved it down Sonberg's throat.

Sonberg testified, throughout this ordeal, she thought she was going to die. As a result of the frequent beatings, she suffered severe bruising to her body lasting one or two weeks and, according to her, a severe concussion. She spent three days at Mayo, during which she underwent surgery. One of her doctors testified she suffered fractures to her jaw, maxillary sinus bone, and hyoid bone and exhibited multiple lacerations inside of her mouth. Fracturing of the hyoid bone is commonly caused by strangulation while the remainder of the injuries can be explained by blunt force trauma to the head or face. To correct her broken jaw, Sonberg underwent an open reduction internal fixation procedure. This procedure involves the internal fixation of the jawbone with titanium plates. Doctors also performed a maxillomandibular fixation, which required the placement of "at least six screws in the jaw." As a result of her broken jaw, Sonberg experiences difficulty with speaking and eating, and her jaw "pops" on occasion. Her jaw line is also misaligned, which has caused chipping of her back teeth.

Lenz was charged by trial information with a number of crimes in relation to the foregoing, including first-degree kidnapping and willful injury causing serious injury. A jury found him guilty on both counts. The district court denied Lenz's subsequent motions for a new trial and in arrest of judgment and sentenced Lenz to life in prison without the possibility of parole on the kidnapping

charge.[3]  Lenz appeals.  Additional facts may be set forth below as are relevant to the issues raised on appeal.

## II.      Evidentiary Rulings

Lenz challenges the district court's evidentiary rulings in two respects.  He contends (1) the district court improperly disallowed questioning of the alleged victim about her drug use at or around the time of the crime and (2) the court erred in allowing irrelevant and prejudicial information regarding whether a sheriff's deputy thought Lenz could have shot him at the time of his arrest.  We review the district court's evidentiary rulings for an abuse of discretion.  *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017).  "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'"  *Id.* (quoting *State v. Buenaventura*, 660 N.W.2d 38, 50 (Iowa 2003)).  Even if we conclude the district court abused its discretion, "we will only reverse if prejudice is shown."  *Id.*

Lenz first complains that the district court disallowed "[a]ny evidence that [Sonberg] attempted to obtain drugs or used drugs near and during the time of the offense" and that such evidence should have been allowed because it "was relevant to her credibility."  In sum, Lenz wanted to be able to offer evidence that Sonberg visited a drug dealer shortly before, or was on drugs at, the time of the offense and, therefore, her recollection of the facts was not credible.  We note, however, the district court did not prevent the presentation of such evidence.  The court expressly noted before opening statements that any evidence of drug use on the part of Sonberg occurring between March 5 and 7 would "be relevant

---

[3] The court merged Lenz's willful-injury conviction with his kidnapping conviction.

to her memory and ability to accurately recall what's happened." The court repeated this position during Lenz's cross-examination of Sonberg, stating, "It would be the court's opinion that the only relevance of drug use or alcohol use . . . by Ms. Sonberg would be as it might affect her ability to comprehend what was going on or later recollect what happened during the time in question."

Lenz attempted to introduce evidence that Sonberg visited a drug dealer at some point in time. However, Lenz was unable to provide any evidence to the district court in his offer of proof that Sonberg's alleged visit to a drug dealer occurred in the relevant timeframe. In fact, the facts submitted to the district court largely indicated Sonberg's alleged visit to a drug dealer occurred sometime prior to March 5. Absent any indication that Sonberg's alleged visit to a drug dealer occurred within the relevant timeframe, we conclude the district court did not abuse its discretion in excluding the evidence.

In any event, the allegation that Sonberg was under the influence of drugs during her captivity made its way to the jury when the State offered a recording of Lenz's initial interview with law enforcement, wherein he stated Sonberg wanted to go to Waterloo for drugs, and when they got there they smoked about $200 worth of crack together. Furthermore, rendering Sonberg's testimony incredible would have done very little for Lenz's cause, as he admitted to many of the criminal acts resulting in his conviction on his own accord. *See State v. Parker*, 747 N.W.2d 196, 210 (Iowa 2008) ("[W]e consider a variety of circumstances in determining the existence of harmless error, including the existence of overwhelming evidence of guilt."). We conclude the district court did not abuse its discretion in excluding evidence concerning Sonberg's alleged drug-related

activities and, in any event, the exclusion of such evidence was harmless and did not result in prejudice or a miscarriage of justice. *See id.* at 209.

Lenz also argues his trial counsel was ineffective in failing to argue the drug evidence was admissible under the inexplicably-intertwined doctrine. Obviously, this doctrine's namesake requires the proffered facts to be "inexplicably intertwined" with the facts underlying the charged crime. *See generally State v. Nelson*, 791 N.W.2d 414, 423–24 (Iowa 2010). Again, there is nothing to show that Sonberg's alleged visit to a drug dealer occurred in relation to her and Lenz's trip to Waterloo on March 5. Absent such evidence, the inextricably-intertwined argument would have been meritless. We therefore conclude trial counsel was not ineffective in failing to pursue the same. *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015) ("[W]here a claimant alleges counsel's failure to pursue a particular course breached an essential duty, there is no such duty when the suggested course would have been meritless.").

Next, Lenz contends the district court improperly allowed irrelevant and prejudicial information regarding whether a sheriff's deputy thought Lenz could have shot him at the time of his arrest. The arresting deputy testified at trial that, during a post-arrest search of Sonberg's residence, he discovered a loaded firearm in the couch "tucked into the cushions" "right beside where Mr. Lenz was sleeping." The State questioned the deputy whether Lenz, at the time of the arrest, could have reached the weapon. Following an overruled objection on speculation grounds, the officer answered, "Yes, he could [have]." He later testified, "I knew at that point that Mr. Lenz could have been able to grab that gun

and shoot me with it." We agree this testimony was irrelevant, *see* Iowa R. Evid. 5.401, but note "[e]rror in admission of evidence must be prejudicial to an accused to constitute cause for reversal." *State v. Liggins*, 524 N.W.2d 181, 188 (Iowa 1994). Simply stated, we are unable to conclude that the deputy's very brief, speculative testimony that Lenz could have reached the firearm and used it amounted to prejudice. Based on the substantial amount of evidence of Lenz's guilt, we cannot say the outcome of the trial would have been any different had the jury not heard this testimony. *Cf. State v. Crone*, 545 N.W.2d 267, 274 (Iowa 1996). We therefore decline to grant Lenz's request for a new trial on this ground.

**III.    Constitutionality of Iowa Code section 702.18**

Next, Lenz argues Iowa Code section 702.18 is unconstitutionally vague as applied to him. He specifically contends the use of the term "protracted" in the statute renders the statute too vague to be enforced in his case. Error was not preserved on this argument, as Lenz did not raise it before the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). He also contends, however, that trial counsel was ineffective in failing to challenge the constitutionality of the statute. We must therefore consider the argument under an ineffective-assistance-of-counsel rubric, claims of which are not subject to our traditional error-preservation rules. *State v. Fountain*, 786 N.W.2d 260, 262–63 (Iowa 2010).

Ineffective-assistance-of-counsel claims are reviewed de novo, as are challenges to the constitutionality of a statute. *Diaz v. State*, 896 N.W.2d 723, 727 (Iowa 2017) (ineffective-assistance claims); *State v. Opperman*, 826 N.W.2d 131, 133 (Iowa Ct. App. 2012) (constitutionality of statutes). To prevail on his claim of ineffective assistance of counsel, Lenz must prove, by a preponderance of the evidence, that (1) his counsel was deficient in failing to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Harris*, 891 N.W.2d 182, 185 (Iowa 2017) (quoting *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006)). In considering a claim of ineffective assistance of counsel, it is not necessary for a reviewing court to determine whether "trial counsel's performance was deficient before examining the prejudice component of [the] ineffective-assistance claim." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006); *accord Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). "Prejudice is established if 'there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.'" *Harris*, 891 N.W.2d at 185–86 (quoting *State v. Reynolds*, 746 N.W.2d 837, 845 (Iowa 2008)); *accord Strickland*, 466 U.S. at 694. "In other words, a party claiming prejudice arising from ineffective assistance of counsel must establish a probability of a different result sufficient to undermine our confidence in the outcome of the case." *Harris*, 891 N.W.2d at 186. If an argument to the district court would have been meritless, the claim fails. *See Tompkins*, 859 N.W.2d at 637.

Section 702.18 defines serious injury to include, among other things, any bodily injury which "[c]auses protracted loss or impairment of the function of any bodily member or organ." As noted, Lenz argues the term "protracted" renders the statute unconstitutionally vague. A defendant challenging the validity of a criminal statute "carries the heavy burden to rebut a strong presumption of constitutionality." *State v. Anderson*, 308 N.W.2d 42, 46 (Iowa 1981) (quoting *State v. Sullivan*, 298 N.W.2d 267, 270 (Iowa 1980)). If a criminal statute "give[s] a person of ordinary intelligence fair notice of what is prohibited" and "provide[s] an explicit standard for those who apply it," the statute is not unconstitutionally vague. *Id.* (quoting *State v. Pierce*, 287 N.W.2d 570, 573 (Iowa 1980)). "The specificity required of a statute need not be apparent on its face," and courts "may look to prior decisions, the dictionary and common usage" in determining whether a statute is unconstitutionally vague. *Id.*

The word "protract" means "to draw out or lengthen in time or space." *Protract*, Webster's Third New International Dictionary 1826 (unabridged ed. 2002). The word "extend," which the district court used in its jury instruction defining serious injury, is a synonym. *Id.* The common meaning of the term carries a similar import. *See, e.g.*, *State v. Dorrance*, 70 A.3d 451, 454 (N.H. 2013). Based on the meaning of the challenged term, we conclude the term "protracted" as used in the statute sufficiently notifies persons of ordinary intelligence that inflicting bodily injuries that cause a lengthened or extended loss or impairment of the function of any bodily member or organ is prohibited. Likewise, in requiring that the bodily injury be protracted, lengthened, or extended, rather than immediately ceasing upon infliction, the statute provides

the jury with an explicit standard for its application. We conclude the statute is not unconstitutionally vague as applied to the facts of this case.

Lenz goes on to argue that Sonberg was "medically fixed" within three days of her injuries—suffering for merely three days cannot amount to a protracted loss or impairment—and the injury only became serious when she declined to follow up on her medical treatment. We, however, believe the injuries suffered by Sonberg and the evidence submitted in this case generated a jury question as to whether her loss or impairment was protracted. *Cf. State v. Welton*, 300 N.W.2d 157, 161 (Iowa 1981); *State v. Mott*, 635 N.W.2d 301, 303–04 (Iowa Ct. App. 2001).

Based on the facts of this case, we conclude a challenge to the constitutionality of Iowa Code section 702.18(1)(b)(3) would have been meritless. We therefore conclude Lenz's trial counsel did not render ineffective assistance in failing to challenge the statute. *See Tompkins*, 859 N.W.2d at 637.

## IV. Sufficiency of the Evidence

Next, Lenz asserts the evidence was insufficient to support a necessary element of the crime, that the victim suffered a serious injury or, alternatively, that any serious injury was a result of confinement. The State contests error preservation on the alternative argument. Because Lenz, in his motions for judgment of acquittal, challenged the establishment of the fourth element, which includes both alternatives above, we elect to bypass the State's error-preservation argument and proceed to the merits. *See, e.g.*, *State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing an error-preservation issue and proceeding to the merits of the appeal).

"We review challenges to the sufficiency of evidence for correction of errors at law." *Tipton*, 897 N.W.2d at 692. A verdict will stand if supported by substantial evidence. *Id.* "Evidence is substantial when a rational trier of fact would be convinced the defendant is guilty beyond a reasonable doubt." *Id.* The evidence is to be viewed "in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (quoting *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005)). We consider all of the evidence, "not just the evidence supporting guilt." *Id.*

The State was required to prove, among other things, that as a consequence of the kidnapping, Sonberg suffered a serious injury. *See* Iowa Code § 710.2; *see also id.* § 702.18. The serious-injury requirement may be satisfied with substantial evidence that Lenz subjected Sonberg to a bodily injury which either (1) created a substantial risk of death, (2) caused serious permanent disfigurement, or (3) caused protracted loss or impairment of the function of any bodily member or organ. *Id.* § 702.18(1)(b). Our supreme court has adopted the Model Penal Code's definition of "bodily injury" which is any "physical pain, illness, or . . . impairment of physical condition." *State v. Gordon*, 560 N.W.2d 4, 6 (Iowa 1997) (quoting *State v. McKee*, 312 N.W.2d 907, 913 (Iowa 1981)).

In his initial interview with law enforcement, Lenz admitted to frequently beating Sonberg during her three-day confinement. He noted he "beat the fuck out of her for like two days straight" and thought the beatings "might have broke[n] some of her ribs and might have broke[n] her jaw too." Sonberg's testimony generally aligned with Lenz's concessions to law enforcement and

added that Lenz strangled her to a point that she thought she was going to die and threatened her with the display of a firearm on multiple occasions, hit her "upside the head" with it, and pressed its muzzle against her flesh. As a result of Lenz's conduct toward Sonberg while he confined her, Sonberg suffered, among other things, a broken jaw that required reparative surgery. She also suffered a fracture to her hyoid bone, which is commonly caused by strangulation.

Based on the evidence presented, the jury could have reasonably concluded that Lenz's strangulation of Sonberg and frequent blows to her head and face during her confinement caused physical pain and created a substantial risk of death. The jury could have also reasonably concluded Sonberg's injuries amounted to protracted losses or impairments of the function of a bodily member or organ, namely her jaw. Viewing the evidence in the light most favorable to the State, we conclude the evidence was sufficient to convince a rational trier of fact that Lenz was guilty of first-degree kidnapping beyond a reasonable doubt. We conclude the district court did not err in denying Lenz's motions for judgment of acquittal.[4]

**V. Jury Instructions**

Finally, Lenz argues "the court failed to instruct the jury on issues in the record." He specifically contends the jury should have "been instructed on the defenses of diminished capacity/responsibility, intoxication, proximate cause, and

---

[4] Our conclusions on this issue are also dispositive of Lenz's final argument, raised as an ineffective-assistance claim, that the jury's general verdict makes it unclear whether he was convicted on a valid or invalid basis. In relation to that argument, he contends "the [S]tate presented no evidence that any injury sustained 'create[d] a substantial risk of death'" and, because it is unclear from the record whether the jury convicted him on this statutory alternative, he is entitled to a new trial. Because we conclude that alternative was supported by substantial evidence, we reject the argument.

superseding or intervening cause." He alternatively argues "trial counsel was ineffective for not ensuring the instructions [were] added."

"Alleged errors in the submission or refusal to submit jury instructions are reviewed for correction of errors at law." *Tipton*, 897 N.W.2d at 694. "'Errors in jury instructions are presumed prejudicial unless' a lack of prejudice is shown beyond reasonable doubt." *Id.* (quoting *State v. Ambrose*, 861 N.W.2d 550, 554 (Iowa 2015)). "We review jury instructions as a whole to determine whether the jury instructions correctly state the law." *Id.* Ineffective-assistance-of-counsel claims are reviewed de novo. *Diaz*, 896 N.W.2d at 727.

A. Proximate Cause and Superseding or Intervening Cause

After the close of evidence, Lenz requested the court to include "standard stock instruction[s] 700.3 . . . and 700.6." The former provides, "The conduct of a party is a cause of damage when the damage would not have happened except for the conduct." Iowa Civ. Jury Instruction 700.3. The latter relates to superseding or intervening cause and generally informs the jury that, if the conduct of another occurs after the conduct of the defendant and causes damage and the prior conduct of the defendant did not create or increase the risk that the victim would sustain the subsequent damage through the conduct of another, then the defendant is not liable. *See* Iowa Civ. Jury Instruction 700.6. Lenz premised his request for these instructions on his assertion that Sonberg's failure to follow her physician's instructions following her surgery resulted in her continuing impairment. The district court declined to include the instructions.

A requested instruction must be given if it "correctly states the law, has application to the case, and is not stated elsewhere in the instructions." *State v.*

*Martinez*, 679 N.W.2d 620, 623 (Iowa 2004) (quoting *State v. Kellogg*, 542 N.W.2d 514, 516 (Iowa 1996)).  The first instruction embraces the factual-cause component of proximate causation: "but for the defendant's conduct, the harm or damage would not have occurred."  *State v. Marti*, 290 N.W.2d 570, 584–85 (Iowa 1980).  The concept of but for causation was clearly included in the district court's instructions to the jury.  As such, we affirm the district court's refusal to include a repetitive instruction concerning proximate cause.

The second instruction relates to legal causation.  *See id.* at 585.  Although it is true that "[a] defendant can be relieved of criminal responsibility if an intervening act breaks the chain of causal connection between the defendant's actions and the victim's" injury, "the intervening act must be the *sole* proximate cause of" injury.  *State v. Garcia*, 616 N.W.2d 594, 597 (Iowa 2000); *accord Mott*, 635 N.W.2d at 303 (noting the intervening act "must be the sole proximate cause of the ultimate injury" in order for the concept of superseding or intervening cause to be relevant).  Our supreme court has noted, "The intervention of a force which is a *normal consequence* of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about."  *Garcia*, 616 N.W.2d at 597 (quoting *State v. Murray*, 512 N.W.2d 547, 551 (Iowa 1994)).  Simply stated, Sonberg's failure to follow her physician's instructions following surgery was not the sole proximate of her injuries.  Rather, Lenz was responsible for the ultimate injury.  *Cf. Mott*, 635 N.W.2d at 303.  Accordingly, the concept of superseding or intervening cause was not applicable to the facts of this case and the district

court did not err in refusing to include the requested instruction. *See Martinez*, 679 N.W.2d at 623.

       B.      Intoxication and Diminished Capacity or Responsibility

Lenz's did not raise intoxication or diminished capacity or responsibility as defenses at trial. As such, those defenses are waived. *See* Iowa Rs. Crim. P. 2.11(3) ("Failure of the defendant to timely raise defenses . . . which must be made prior to trial under this rule *shall* constitute waiver thereof . . . ." (emphasis added)); 2.11(4) (requiring motions under rule 2.11 to be filed no later than forty days after arraignment); 2.11(11)(b)(1) (noting notice of diminished-responsibility defense is subject to time deadlines under rule 2.11); 2.11(11)(c) (noting notice of intoxication defense is subject to time deadlines under rule 2.11); *see also State v. Battle*, No. 12-0272, 2013 WL 541640, at *2 (Iowa Ct. App. Feb. 13, 2013) (finding defense waived when not raised in district court).

We are therefore left with Lenz's argument that "trial counsel was ineffective for not ensuring the instructions [were] added." We decline to entertain this argument because it is contained in a single sentence tacked on to the end of Lenz's analysis on this issue. Lenz provides us with no analysis, argument, or on-point authority concerning how his counsel was deficient in failing to perform an essential duty and how it resulted in prejudice to him. Under these circumstances, we would normally consider an argument on appeal waived. *See* Iowa R. App. P. 6.903(2)(g)(3); *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *see also Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have

made and then search for legal authority and comb the record for facts to support such arguments."); *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume."). However, when an ineffective-assistance-of-counsel claim is raised on direct appeal, we are required to *either* decide the record is adequate to decide the claim *or* choose to preserve the claim for postconviction-relief proceedings. *State v. Johnson*, 784 N.W.2d 192, 199 (Iowa 2010) (discussing Iowa Code § 814.7(3)). On this record, we choose to preserve Lenz's claim that his trial counsel was ineffective in failing to ensure the inclusion of the jury instructions concerning intoxication and diminished capacity or responsibility.

## VI. Conclusion

We affirm Lenz's conviction of first-degree kidnapping in its entirety. We preserve for postconviction-relief proceedings Lenz's claim that his trial counsel was ineffective in failing to ensure the inclusion of the jury instructions concerning intoxication and diminished capacity or responsibility.

**AFFIRMED.**