# IN THE COURT OF APPEALS OF IOWA

No. 24-0196
Filed May 7, 2025

**JOSHUA KELLY URANGA,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Boone County, Christopher C. Polking, Judge.

An applicant appeals the denial of postconviction relief. **AFFIRMED.**

Sara Pasquale of Pasquale Law, Ankeny, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered without oral argument by Greer, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Joshua Uranga appeals from the denial of postconviction relief (PCR). The postconviction court denied relief by way of summary disposition because both parties requested summary disposition, the facts were undisputed, and the State was entitled to judgment as a matter of law. Uranga does not challenge the merits of that ruling. He instead asserts his "PCR counsel was ineffective, resulting in prejudice." Limiting our review to the claim Uranga actually briefed, we affirm.

## I. Background Facts and Proceedings

Uranga was convicted of failing to timely register as a sex offender in 2018. *See* Iowa Code §§ 692A.103, .108, .111 (2016). We affirmed his conviction on direct appeal, rejecting a challenge concerning newly discovered evidence in the form of a letter from the sheriff suggesting he had a five-day grace period to register. *See State v. Uranga*, No. 18-1777, 2020 WL 1310283, at *3–4 (Iowa Ct. App. Mar. 18, 2020). The supreme court affirmed our decision on further review. *See State v. Uranga*, 950 N.W.2d 239, 243–46 (Iowa 2020). And procedendo issued in December 2020.

In July 2023—about six months before the postconviction statute of limitations expired—Uranga applied pro se[1] for postconviction relief. The State moved to dismiss the application pre-answer, and Uranga filed an amended

---

[1] In this majority opinion, we cite only pro se filings made while Uranga was not represented by counsel. We are forbidden from considering any pro se filings made while he was represented. Iowa Code § 814.6A. But if we were to cite the hybrid filings, like the dissent does, we think they confirm that Uranga received what he wanted—the court to rule on the pleadings and consider the case via summary disposition.

application and requested appointed counsel.  Uranga also filed a motion for summary disposition.  And the court eventually accepted the amended application.

Counsel was appointed and successfully continued the hearing on the State's motion to dismiss, then successfully argued against dismissal on the merits.  PCR counsel also obtained the underlying criminal-trial transcripts.

In December 2023, the State moved for summary disposition.  PCR counsel did not resist and did not attend a virtual hearing on the motion.  The State argued at the hearing what it had previously put in writing: the facts were not in dispute and the law favored the State, so summary disposition was appropriate.

The postconviction court granted summary disposition in favor of the State. The court understood Uranga to be arguing his trial counsel was ineffective for essentially not pursuing or developing certain statutory arguments.  The court found no disputed material facts, concluded that Uranga's statutory arguments were incorrect as a matter of law, and denied relief because trial counsel had no duty to pursue the meritless statutory claims.  In other words, the postconviction court denied the application on the substance rather than any procedural default.

Uranga appeals, alleging postconviction counsel rendered ineffective assistance in three ways: (1) not resisting summary disposition in writing or orally by attending the hearing; (2) allowing "Uranga [to be] deprived of due process of law"; and (3) "fail[ing] to identify key and obvious legal issues that support Uranga's claim that trial counsel was ineffective and amend Uranga's postconviction petition appropriately."

## II.     Error Preservation

The State contests error preservation, arguing that none of these issues were decided below.  Our review of the record supports that argument, and Uranga does not contend otherwise; we therefore summarily reject the due-process argument as unpreserved, to the extent it is independent of any ineffective-assistance challenge.[2]  As for the other claims, we have limited authority to—in rare circumstances—decide ineffective-assistance claims related to postconviction counsel on postconviction appeal "when the appellate record is adequate."  *See Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018).  Here, the record is not adequate.

We certainly do not condone counsel failing to attend a virtual hearing and resist summary disposition (though we note Uranga also filed a motion for summary disposition and presumably believed that was the best way to resolve the case).  But we are left with serious questions unanswered by the record.  We don't know what investigation and research postconviction counsel undertook regarding the statutory interpretation questions or the propriety of summary disposition.  We don't know why he didn't file a resistance or appear at the hearing (though we are mindful he would be bound by his client's wish if Uranga wanted to resolve the case this way).  We don't know why counsel didn't raise certain issues that are alluded to now in Uranga's appellate briefing.  And we don't know why he didn't file an amended application (though we are again mindful that, while a pro

---

[2] Even if we didn't reject it as unpreserved, the due-process claim is so underdeveloped we would have to impermissibly assume a partisan role to decide it.  *See Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974).

se application may contain frivolous or unsupported arguments, an application filed by counsel may not).

As we have on many previous occasions, we apply *Goode* and find these deficiencies in the record prohibit appellate review. *See, e.g., Ernst v. State*, No. 23-1598, 2025 WL 271479, at *6 (Iowa Ct. App. Jan. 23, 2025); *Freese v. State*, No. 23-0139, 2024 WL 2842312, at *2 (Iowa Ct. App. June 5, 2024); *Spellman v. State*, No. 22-0499, 2024 WL 1551158, at *3–4 (Iowa Ct. App. Apr. 10, 2024); *Brown v. State*, No. 22-0459, 2023 WL 3335384, at *3–4 (Iowa Ct. App. May 10, 2023). To decide Uranga's ineffective-assistance claims, we would have to speculate as to both the breach and prejudice prongs under *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). And under our case law, we affirm rather than speculate as to what a fully developed record might or might not contain. *See Freese*, 2024 WL 2842312, at *2 ("Is the lack of evidence supporting Freese's claims a result of some failure by PCR counsel? Or is it because no such evidence exists? Because the record provides no answers, we affirm.").

Last on this point, we observe that our application of *Goode* as controlling precedent does not ordinarily leave applicants without relief. The path to relief for an applicant who claims his postconviction counsel was ineffective is to file a separate application for postconviction relief. *See Goode*, 920 N.W.2d at 527 (requiring an applicant to "assert his claim of ineffective assistance of postconviction counsel raised on appeal in a separate application for PCR"). Ordinarily, Uranga could file a second application for postconviction relief, and we would probably get answers to some of these questions—and Uranga might get relief. But here, Uranga sat on his first application for about two-and-a-half years

before filing it, and the limitations period has likely now expired. Under *Goode*, Uranga must bear the consequences of waiting to seek postconviction relief until the statutory limitations had nearly lapsed. And to the extent he believes the time bar may be unfair, such a challenge must await future litigation.

## III.    The Issue Briefed

Although we need not engage with the substance of Uranga's argument given *Goode* and its progeny, we note what claims are not before us: anything relating to "structural error." That term does not appear in Uranga's appellate brief. And he specifically refers multiple times to needing to prove "prejudice" or being "prejudiced" and "prejudicial," when *not* having to prove prejudice is the hallmark of a structural-error claim. *See Lado v. State*, 804 N.W.2d 248, 251–52 (Iowa 2011). So we conclude it is not reasonable for us to transmute Uranga's brief into something it's not. We take Uranga's brief at its word, that he is arguing "counsel was ineffective"—not that there was a structural error.

To go beyond the briefs and invent an argument for Uranga that he never made for himself is improper and oversteps our role as a court for the correction of errors at law. *See* Iowa Code § 602.5103(1). "This court is not a roving commission that offers instinctual legal reactions to interesting issues that have not been raised or briefed by the parties and for which the record is often entirely inadequate if not completely barren." *City of Davenport v. Seymour*, 755 N.W.2d 533, 545 (Iowa 2008). "We decide only the concrete issues that were presented, litigated, and preserved in this case." *Id.* And we do not "speculate on the arguments [an appellant] might have made and then search for legal authority and comb the record for facts to support such arguments." *Hyler v. Garner*, 548 N.W.2d

864, 876 (Iowa 1996). To do otherwise would undermine confidence in the courts and invite criticism that we have abandoned our role as neutral referees. *See, e.g.*, E. King Poor & James E. Goldschmidt, *But No One Argued That: Sua Sponte Decisions on Appeal*, 57 DRI For Def., Oct. 2015, at 62; Adam A. Milani & Michael R. Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts*, 69 Tenn. L. Rev. 245 (2002).

We conclude the only question before us is whether Uranga can prove counsel breached an essential duty and that he was prejudiced, under the familiar framework of *Strickland v. Washington*, 466 U.S. at 687–88.

## IV. Discussion

In adhering to the arguments actually made, rather than going beyond the briefs, we focus on *Strickland*'s prejudice prong: can Uranga prove that, with different counsel, there would be a reasonable probability of a different outcome below? We don't think so. In his brief, Uranga never identifies anything counsel could have done to prevail at the summary-disposition stage. And there don't appear to be any disputed facts nor is there any real debate over the questions of law. Beyond that, we agree with the State's brief that Uranga "does not argue that the PCR court erred in any of its rulings that granted summary disposition on any of his claims." The postconviction court issued a detailed ruling predicated on substance rather than any procedural default. And it could have done so on its own motion, without any hearing at all. *See* Iowa Code § 822.6(2). Uranga had

his case decided on the merits, we discern no legal error, and we affirm the denial of postconviction relief.

**AFFIRMED.**

Greer, P.J., concurs; Langholz, J., dissents.

**LANGHOLZ, Judge** (dissenting).

If Iowa's statutory right to counsel in postconviction-relief ("PCR") proceedings still guarantees that court-appointed counsel will assist—rather than abandon—their clients, that right was violated here.

Joshua Uranga was appointed counsel to represent him in this, his first, PCR application. But when the State moved for summary disposition of the application, his counsel did nothing. His counsel did not file a written resistance to the motion. His counsel did not appear at the hearing on the motion. So the district court granted the unopposed motion, ruling that all fifteen of Uranga's claims failed as a matter of law. And yet the majority affirms because it's unsure from these facts if the counsel breached any duty to Uranga and it doesn't think Uranga suffered any prejudice since the court denied Uranga's claims on the merits.

Both conclusions run afoul of governing precedent and the underlying principles of fundamental fairness. Because abandoning Uranga without a voice in the court's summary disposition of his PCR claims could never be an ethical strategy, we do not need any more evidence to find that Uranga's counsel breached an essential duty. Since this conduct left Uranga constructively without counsel at a crucial stage of the PCR proceeding and thus rendered the entire proceeding presumptively unreliable, Uranga is entitled to reversal without proving any further prejudice. And Uranga presents this ineffective-assistance-of-counsel claim in his briefing to us—so we should not avoid following the governing law based on a hyper-technical reading of his arguments. I would thus reverse and remand for further proceedings *with* the effective assistance of counsel to which Uranga is entitled. As the majority charts a different course, I respectfully dissent.

## I. Ineffective Assistance by PCR Counsel

While civil in nature, postconviction relief is a critical phase of our state criminal justice system. Indeed, it is now the only time in which criminal defendants can seek to vindicate their state and federal constitutional rights to the effective assistance of counsel in state court. *See* Iowa Code § 814.7. So our PCR statute generally grants indigent PCR applicants challenging their convictions a right to court-appointed counsel to assist "in the preparation of the application, in the trial court, and on [appellate] review." Iowa Code § 822.5; *see also Dunbar v. State*, 515 N.W.2d 12, 14 (Iowa 1994). And when a court appoints counsel, PCR applicants must exclusively "speak through their counsel"—the district court is prohibited from considering any self-represented filings by the applicant except for a request to disqualify the counsel. *Hrbek v. State*, 958 N.W.2d 779, 789 (Iowa 2021); *see* Iowa Code § 822.3A. It thus makes sense that our supreme court has held that once a PCR applicant has court-appointed counsel, the applicant has "a right to the effective assistance of this counsel." *Dunbar*, 515 N.W.2d at 15. To show ineffective assistance of counsel under the statute—just as under the state or federal constitutions—an applicant typically must prove that counsel failed to perform an essential duty and that prejudice resulted. *See id.*; *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

*Breach of an Essential Duty.* For the first prong, "ineffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). Because we presume attorneys perform competently and will not second-guess reasonable yet unsuccessful

strategies or judgment calls, "there is a greater tendency for courts to find ineffective assistance when there has been an abdication—not an exercise of— professional responsibility." *Id.* at 142–43 (cleaned up).

Here, Uranga's PCR counsel's failures indicate a lack of diligence. Summary disposition is a crucial juncture in PCR actions. When confronted with dismissal of Uranga's action, counsel provided him no assistance—counsel filed nothing, orally argued nothing, and did not request any extra time to prepare those arguments if workload was an issue. Because summary-disposition motions may be granted on the papers alone, failing to file a written resistance can be perilous. *See* Iowa Code § 822.6(3). And even if we could assume that the lack of written resistance was somehow a strategic decision, also failing to attend the hearing without any prior warning or subsequent explanation—rendering the State's motion wholly uncontested—tips the scales toward finding an abdication of professional judgment. Indeed, the State does not even try to argue there was no breach here—resting instead on the prejudice prong. I would thus find that Uranga's PCR counsel breached an essential duty by providing no assistance of counsel during a dispositive stage of Uranga's PCR application.

The majority reasons that we cannot decide this issue because it was not raised in the district court and the record is inadequate to decide it for the first time on appeal. *See Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018) (explaining the "general rule" that appellate courts "do not address issues presented on appeal for the first time" and the exception "for claims of ineffective assistance of trial counsel raised for the first time on appeal" which can be decided "when the appellate record is adequate" to avoid "the time and expense of a new district court proceeding").

But the record here is adequate to find that Uranga's counsel breached an essential duty by his wholesale failure to resist the State's summary-disposition motion.[3] No other evidence is needed to discern whether his counsel resisted the motion—the record is clear his counsel did not. And because the summary-disposition hearing was reported, there is also no ambiguity about what arguments his counsel made during the hearing—the record is clear he made none. In fact, neither the counsel nor Uranga was even present.

It matters not *why* Uranga's counsel failed to resist summary disposition as the majority questions. Failing entirely to resist a dispositive motion and skipping the hearing on the motion without notice to the court could never be an effective strategy or a reasonable judgment call for a PCR applicant's counsel. *See Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011) ("Permitting a client's postconviction relief application to be dismissed because of inaction is never an effective trial strategy."). That complete abdication of counsel's duty to his client is thus different from a claim that counsel failed "to pursue a particular course"—such as moving to suppress evidence or objecting to testimony at trial—where we can consider whether the suggested course has merit since there is no "duty when the suggested course would have been meritless." *State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015); *see also State v. Carroll*, 767 N.W.2d 638, 645 (Iowa 2009). We would never say that a counsel who skipped out on a criminal trial at which

---

[3] Uranga also makes a second claim that his counsel was ineffective by not investigating his case to amend his application to raise other bases for relief. I agree with the majority that this claim cannot be considered for the first time on appeal. Based on the limited record before us, we cannot discern what steps his counsel took to review Uranga's self-represented application or investigate other possible bases for relief. Without that information, we cannot resolve that claim.

indisputable evidence of guilt was introduced did not breach an essential duty just because any defense at trial was meritless. Nor should we here. *Cf. Penson v. Ohio*, 488 U.S. 75, 85 (1988) ("The need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to appellate stage. Both stages . . . require careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over.").

Plus, the record dispels any notion that Uranga's counsel made a considered choice to skip the hearing or acted on Uranga's direction. Uranga's counsel filed nothing in the roughly month between when the State moved for summary disposition and the hearing on that motion. The transcript of the court's remote hearing does not show that counsel had otherwise contacted the court. Instead, after stating that the counsel had not filed anything and not appeared, the court explained that "even if the State was inclined to," it would not "delay hearing this motion" because it would not "still have time to rule on it" before the trial date seventeen days later. The next morning—without any mention of having missed the summary-disposition hearing the day before—Uranga's counsel moved to continue the trial date because of a scheduling conflict with another court hearing.

Even after the court's dismissal ruling, Uranga's counsel did not file any post-ruling motions. Two weeks later, Uranga—seemingly unaware his application had been dismissed—filed a handwritten letter to his counsel[4] stating he believed the facts were not in dispute and thus the case could be summarily resolved in his

---

[4] In a cover note, Uranga asked the clerk to "EDMS" the letter to his counsel. This is one of several to his counsel filed in the proceeding, apparently because he decided electronic filing was the best way to try to communicate with his counsel.

favor. The letter asked his counsel to contact him prior to "formally agreeing" with the State to resolve the action without a trial and stated he "would like to Zoom any hearing." The next day,[5] Uranga moved to disqualify his counsel, seemingly now aware of his case's dismissal and stating his counsel "had been completely dormant" other than "one phone when he was appointed." About ninety minutes later, his counsel moved to withdraw from the case because Uranga intended to appeal and the counsel's indigent-defense contract did not include appellate work.

None of these facts undermine the finding that Uranga's counsel breached an essential duty. They buttress it. And Uranga thus satisfies his burden under the first prong of an ineffective-assistance-of-counsel claim.

*Prejudice.* I also part ways with the majority on the proper analysis of Uranga's claim under the second—prejudice—prong. Because "not all trial errors undermine the reliability and fairness of the legal proceeding," the normal actual-prejudice standard ensures "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Lado*, 804 N.W.2d at 251 (cleaned up); *see also id.* ("Ordinarily, a claimant must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different to establish prejudice." (cleaned up)). Still, some attorney errors render the PCR proceedings "so unreliable" that the "statutory right to counsel entitles the defendant to a new proceeding without the need to show the error actually caused prejudice." *Id.* at 252. One such error is when "counsel is completely denied,

---

[5] While both Uranga's filings were docketed the same day—they are postmarked on two sequential days.

actually or constructively, at a crucial stage of the proceeding." *Id.* In that case, "prejudice is presumed" and the applicant need not make any further showing on the prejudice prong "because such an analysis would be a speculative inquiry into what might have occurred in an alternate universe." *Id.* (cleaned up).

By adopting this standard for the complete denial of the statutory right to counsel in PCR proceedings, our supreme court followed well-established United States Supreme Court precedent on the constitutional right to counsel. *See id.* at 252 (citing *United States v. Cronic*, 466 U.S. 648, 659 (1984); *Penson v. Ohio*, 488 U.S. at 77–78, 88). Indeed, even the seminal case of *Strickland v. Washington* began by declaring: "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland*, 466 U.S. at 692; *see also Cronic*, 466 U.S. at 659 n.25 (collecting seven cases from 1945 to 1976 and noting that "[t]he Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding"). And that same presumption of prejudice applies when a convicted defendant is completely denied counsel on appeal—even when the appellate court conducts a thorough review of the record and considers the merits of the defendant's potential claims. *See Penson*, 488 U.S. at 85–88 (reversing for reconsideration of the appeal with the assistance of counsel when state court had decided the appeal after permitting counsel to withdraw based on a bare assertion that the appeal was meritless). This presumption remains necessary even when the court has tried to consider the merits of the defendant's claims because "mere speculation that counsel would not

have made a difference is no substitute for actual . . . advocacy, particularly when the court's speculation is itself unguided by the adversary process."  *Id.* at 87.

And so, in *State v. Lado*, our supreme court found that a first-time PCR applicant "was constructively without counsel" when his counsel "sat silent and did not respond" to the State's motions for summary judgment and dismissal, including for failure to prosecute under Iowa Rule of Civil Procedure 1.944, and the court dismissed the PCR application for failure to prosecute "without any consideration of its merits or meaningful adversarial testing."  *Lado*, 804 N.W.2d at 252–53.  The court thus held that "prejudice [was] presumed" and that the applicant had proved that his counsel violated his statutory right to the effective assistance of counsel.  *Id.* at 253.  So it reversed the dismissal and remanded for further proceedings.

But in *Ruiz v. State*, the court found that an applicant failed to prove such a constructive denial of counsel where his counsel did not file a written resistance to the State's motion to dismiss his second PCR application as untimely—but did attend the unreported hearing on the motion—and the district court then dismissed the application as untimely.  *See* 18 N.W.3d 453, 458–60 (Iowa 2025).  In distinguishing *Lado*, the court first reasoned that *Lado* involved an applicant's first PCR application and the district court there "would have never heard his case on the merits had we not reversed and remanded."  *Id.* at 458.  Unlike *Lado*, "Ruiz had appointed counsel in his first PCR action that assisted him with his case, and the district court examined his claims on the merits."  *Id.*  Second, the court noted that while the application in *Lado* was dismissed for lack of prosecution under rule 1.944 because of the counsel's inaction, Ruiz's second application was dismissed as untimely under a statute that would have required dismissal even if his second

PCR "counsel made the argument he now proposes about his first PCR counsel's ineffectiveness." *Id.* at 459. And third, the court repeatedly stressed that Ruiz's second PCR counsel was present at the dismissal hearing and little was known about any inadequate performance by the counsel during the unreported hearing. *See id.* ("For all we know on this record, Ruiz's counsel raised the arguments at the hearing that he is now advocating for on appeal. . . . . Ruiz speculates that counsel could have taken certain actions to prevent dismissal for untimeliness, but we do not know what actions counsel took at the hearing . . . .").

Uranga's case is more *Lado* than *Ruiz*. For starters, this is Uranga's first PCR application, as in *Lado*. Unlike the supreme court in *Ruiz*, we cannot take comfort that Uranga has had his day to be heard in court and received a decision tested by adversarial—and thus presumptively reliable—proceedings in trial court and again on appeal. *See id.* at 458–59. The importance of this distinction and the criticality of the merits hearing is even greater than when *Lado* was decided because a timely postconviction-relief proceeding is now the *only* stage at which criminal defendants may raise a claim of ineffective assistance of their criminal trial or appellate counsel. *See* 2019 Iowa Acts, ch 140, § 31 (codified at Iowa Code § 814.7) ("An ineffective assistance of counsel claim shall be determined by filing an application for postconviction relief . . . and the claim shall not be decided on direct appeal from the criminal proceedings.").

What's more, our record is clear that Uranga's counsel took no action to resist the summary-disposition motion and failed to even show up for the hearing on that motion. That also separates this case from *Ruiz*, where the PCR counsel *did* represent the applicant at the hearing on dismissal and there was no evidence

that the counsel failed to effectively advocate for the applicant at the hearing. And that distinction makes the difference. Because Uranga "was constructively without counsel" during the court's summary consideration of the merits of his PCR application without any "meaningful adversarial testing," the proceeding was rendered "presumptively unreliable." *Lado*, 804 N.W.2d. at 253 (cleaned up).

True, as the majority notes, the district court did try to consider the merits of Uranga's fifteen handwritten claims as best it could without any advocacy from an attorney on Uranga's behalf. And the State may ultimately be proved right that the court correctly collapsed all his claims to a single question of statutory interpretation that fails on the merits. But the court's merits decision was made through the State's unchallenged lens, without any "meaningful adversarial testing." *Id.* Indeed, one of the few questions from the court during the short hearing was how the prosecutor "read" Uranga's application and the bases of Uranga's different claims as "best" the prosecutor could "discern from what he's put up"—precisely the time where an advocate for Uranga would have been helpful. So we cannot rely on that decision or speculate that having counsel's advocacy would have made no difference. *See id.* at 252–53; *see also Penson*, 488 U.S. at 85–88.

At bottom, Uranga was statutorily entitled to effective assistance from his court-appointed counsel in this PCR action. *See Dunbar*, 515 N.W.2d at 14–15. At a critical stage, his counsel did nothing. Uranga's counsel did not merely fail to file a brief—he failed to even show up at the hearing to contest the state's summary-disposition motion. *Cf. Ruiz*, 18 N.W.3d at 457. I would thus follow *Lado*—and the longstanding United States Supreme Court precedent on which it

is based—and find Uranga was constructively without counsel at a critical stage, which undermines the reliability of the proceeding and requires reversal. *See Lado*, 804 N.W.2d at 252–53.

## II.     Uranga's Presentation of this Claim of Error

Despite the facts and the law supporting Uranga's ineffective-assistance-of-counsel claim, the majority contends that we need to ignore *Lado* and require Uranga to prove a reasonable probability that he would prevail on his PCR claims. It reasons that Uranga has not argued that we should presume prejudice or used the phrase "structural error"—a term our supreme court used in *Lado* to describe the complete denial of counsel like what occurred here. *See id.* at 252. So, the majority says, we should "take Uranga's brief at its word, that he is arguing 'counsel was ineffective'—not that there was a structural error." But this reasoning falters because it rests on a false distinction: *Lado*'s concept of "structural error" is a part of our statutory ineffective-assistance-of-counsel doctrine—not a separate claim. *See id.* at 252–53. And a fair reading of Uranga's brief squarely presents the claim that his counsel's complete failure to resist dismissal left him unrepresented and entitled to reversal because of that violation of his statutory right to the effective assistance of counsel.

To be sure, Uranga does not use the specific term "structural error" or expressly rely on *Lado*'s holding on the presumption of prejudice to satisfy the second prong of his ineffective-assistance claim in his appellate brief. But half of the argument section of his brief is dedicated to arguing his counsel was ineffective for failing to resist dismissal and thus depriving him of a "fundamentally fair" proceeding with "any opportunity to be heard." He argues that his "counsel's

inaction was prejudicial" because it "allowed the State to present its theory of the case unopposed" and failed to preserve error on any arguments against dismissal for appellate review. And he agues that his counsel "simply did nothing" and left Uranga "wholly without a voice at the hearing, essentially reducing the matter to an ex parte proceeding." These arguments are the essence of *Lado*'s reasoning that the complete denial of counsel at a crucial stage of the PCR proceeding automatically satisfies the prejudice prong of an ineffective-assistance-of-counsel claim. *See id.*; *see also Strickland*, 466 U.S. at 692.

What's more, Uranga's appellate arguments are much like those made by the appellant in *Lado*. There, the appellant also did not specifically argue that his counsel committed "structural errors" or that the denial of counsel resulted in a presumption of prejudice—instead only discussing the traditional *Strickland* standard. *See* Brief of Appellant, *Lado v. State*, 804 N.W.2d 248 (Iowa 2011) (No. 09-0853), 2010 WL 9369394, at *13–18. Yet our supreme court still applied the presumption to his claim and did not require proof of prejudice. *See Lado*, 804 N.W.2d at 251–53. I see no reason to take a different approach here.

Would it have been better if Uranga had expressly connected the dots with a citation to *Lado*?[6] Of course. But the lack of that citation neither requires us to rove beyond the ineffective-assistance-of-counsel claim presented to us nor hinders our ability to apply the correct law for that claim. In failing to follow *Lado*, the majority puts "form over substance." *Goode*, 920 N.W.2d at 524–25 (vacating the court of appeals opinion for rejecting appellant's ineffective-assistance-of-

---

[6] Both Uranga and the State did cite *Lado*—but only for its statement of the standard of appellate review.

counsel claim in a PCR proceeding because he improperly framed it as a constitutional right rather than a statutory violation). And it essentially concludes Uranga has forfeited his ineffective-assistance-of-counsel claim at the heart of his appeal just because he did not present perfect advocacy to us. *See State v. Jackson*, 4 N.W.3d 298, 311 (Iowa 2024) (summarizing the limited circumstances in which a party forfeits and issue—none of which apply here either).

Some of the confusion may stem from our supreme court's use of the term "structural error" to describe when prejudice is presumed on an ineffective-assistance-of-counsel claim because of the actual or constructive denial of counsel. *See Lado*, 804 N.W.2d at 252; *Ruiz*, 18 N.W.3d at 458. Despite the use of the same words, I understand "structural error" in this context to be a distinct concept from the federal structural-error doctrine that describes violations of "basic, constitutional guarantees that should define the framework of any criminal trial" that when objected to and raised on direct appeal generally require automatic reversal without conducting the normal harmless-error analysis. *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017). The federal structural-error doctrine sweeps in a broader set of errors that may not "necessarily render a trial fundamentally unfair and unreliable." *Id.* at 296. And such a structural error does not always warrant a presumption of prejudice when raised for the first time as ineffective assistance of counsel. *See id.* at 299–303; *see also Smith v. State*, 7 N.W.3d 723, 726–27 (Iowa 2024). So a claim of this *federal* structural error would likely need to be argued separately from a claim of ineffective assistance of counsel to properly present to us.

But that's not what's at issue here. *Lado*, as already discussed, merely sets the standard for the prejudice prong of a PCR ineffective-assistance-of-counsel claim in a subset of cases—the complete denial of counsel—that our supreme court calls structural error.[7] And Uranga has properly raised an ineffective-assistance-of-counsel claim that falls under *Lado.* So we must apply—not ignore—*Lado* as binding precedent.

\* \* \*

I am mindful of the practical challenges for district courts, prosecutors, and court-appointed counsel caused by the increasing number of PCR applications and the decreasing attorneys available to be appointed as counsel for PCR applicants. But the solution to those problems cannot be what happened here. Rather than giving Uranga a voice in this proceeding, the appointment of counsel muzzled him. That flips the right to counsel granted our legislature on its head. And it demands reversal to give Uranga his day in court with the assistance of counsel.

---

[7] In the federal ineffective-assistance-of-counsel cases on which our supreme court based its reasoning in *Lado*, the United States Supreme Court did not use the term "structural error." *See Cronic*, 466 U.S. at 659; *Penson*, 488 U.S. at 77–78, 88. As detailed above, those cases—like *Lado*—rest on the proper application of the prejudice prong of an ineffective-assistance-of-counsel claim for "a very narrow set of cases in which the accused has effectively been denied counsel altogether." *Weaver*, 582 U.S. at 307–08 (Alito, J, concurring in the judgment). And "[t]he prejudice prong of *Strickland* is entirely different" than "[t]he concept of 'structural error.'" *Id.* at 309. While the difference in terminology between our supreme court and the United States Supreme Court does not affect the validity of *Lado* or the outcome of Uranga's appeal, it strikes me that much confusion in this area of the law could be avoided if we stopped using the term "structural error" to describe the presumption of prejudice that must be applied when a PCR applicant is completely denied the statutory right to the effective assistance of counsel. The words of *Strickland* get the job done without borrowing from another doctrine to give the concept a name. *See Strickland*, 466 U.S. at 692 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").