# IN THE COURT OF APPEALS OF IOWA

No. 23-1518
Filed December 17, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BREACK ALLEN BRADFORD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Warren County, Thomas P. Murphy, Judge.

        A defendant appeals his conviction for second-degree sexual abuse. **AFFIRMED.**

        Erin M. Carr (argued) of Carr Law Firm, P.L.C., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Nicholas E. Siefert (argued), Assistant Attorney General, for appellee.

        Heard at oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**BADDING, Judge.**

This appeal presents the first opportunity for our appellate courts to consider the constitutionality of Iowa's newly enacted outcry statute: Iowa Code section 622.31B (Supp. 2022). The appellant, Breack Bradford, was convicted of sexually abusing his minor daughter. At his jury trial, the district court allowed a child protective worker to testify about the victim's initial disclosure of the abuse. Bradford claims this violated his federal constitutional right to confront his accuser. We reject that challenge because the victim—as required by the statute—testified at trial. We also reject Bradford's claim that the court erred by allowing the victim to testify outside his presence and his claim that there was insufficient evidence to support the jury's guilty verdict.

I.      **Background Facts and Proceedings**

In April 2022, eleven-year-old L.B. was sent to the school counselor's office for making inappropriate sexual comments and gestures to her classmates. When asked why she was making those comments and gestures, L.B. told the counselor that her father, Breack Bradford, had been showing her "videos of adults having sex" on his laptop and cell phone. The counselor reported the child's allegations to the Iowa Department of Health and Human Services.

The department sent Sadie Bruce—a child protective worker—to the school to talk to L.B. The child told Bruce that her father had been showing her videos of "sex stuff" because "there were things that boys would want to do to her when she was older." L.B. said that this started before she was nine years old but eventually stopped. When Bruce asked, "What made this stop?" L.B. responded that her father "began touching her body and showing her on her body what . . . boys would

do to her." She told Bruce that her father grabbed and sucked on her breast, rubbed his penis against her vaginal area, put his penis in her mouth, and made her rub his penis. L.B. said that these things would happen in her bedroom and in her parents' bedroom.

A police officer met Bruce at the school, and they arranged for L.B. to be interviewed the next day at the Blank Children's Hospital STAR Center. After the interview, Bruce and law enforcement officers met L.B.'s mother at the family's home. Using a black light, officers found stains on a *My Little Pony* rug in L.B.'s bedroom. Three of those stains were positive for seminal fluid. The DNA profile developed from one stain was too weak for a conclusive analysis, but the profile developed from the other two matched Bradford's known profile. Bradford was arrested and charged with second-degree sexual abuse of his daughter.

As Bradford's trial approached, the State filed a motion under Iowa Code section 622.31B notifying Bradford that it intended to have Bruce testify about L.B.'s initial disclosure of the sexual abuse. Bradford resisted the State's motion, arguing that Bruce's testimony was hearsay and impermissible bolstering of the child's potential testimony. He also argued the statute violated his Sixth Amendment right to confrontation. After a hearing on the motion, the district court denied Bradford's objections and ruled that "if the child victim testifies at trial," then her statements to Bruce would be admissible under the statute. The court also granted the State's motion under Iowa Code section 915.38 to have the child testify outside Bradford's physical presence.

L.B. was the last witness called by the State at Bradford's trial. She provided some of the same details about the sexual abuse that she had disclosed

to Bruce. She also testified that Bradford had "pulled my pants down, and he pulled his down, and he put his penis inside my vagina." L.B. explained that Bradford referred to "the white stuff that came out of his penis" as "milk." She testified that the white stuff went onto her floor and described how "[h]e would always, like, use my clothes to wipe it up. And I would get mad at him, because I don't want my favorite clothes to be all dirty and stained." L.B. testified that these things happened after she stopped going to daycare, which her mother said was in February 2020.

Bradford did not testify, but he called two of L.B.'s past daycare providers, both of whom testified that she acted in a sexually inappropriate manner when they cared for her. They also testified that she was dishonest and that she sometimes made up stories to get out of trouble. L.B. acknowledged on cross-examination that she had "gotten in trouble for the lying" before. But on redirect, she testified:

> Q. All right. And have you done your best to—when somebody would ask you a question about what happened—to do your best to be truthful in your answer? A. Yes.
> Q. Okay. And when we talk about or when you told us about all of the different things that your dad did to you, did he do those things to you? A. Yes.
> Q. Are you making any of that up? A. No.

After hearing this evidence, the jury found Bradford guilty of second-degree sexual abuse in violation of Iowa Code section 709.3(1)(b). He appeals.

## II. Sufficiency of the Evidence

Although Bradford presents his claims in a different order, we address his challenge to the sufficiency of the evidence first. *See State v. Sievers*, 20 N.W.3d 203, 207 (Iowa 2025) (addressing a sufficiency challenge first because if successful, the defendant "would be entitled to a remand for entry of acquittal, and

the remaining issues seeking a new trial would be moot"). We review this challenge "for the correction of errors at law, viewing the evidence in the light most favorable to the State." *Id.* "Our review is highly deferential to the jury's verdict, and we affirm the jury's verdict when the verdict is supported by substantial evidence." *Id.* (cleaned up). Evidence is substantial when "it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted).

Bradford argues that L.B.'s testimony was so inconsistent that no reasonable juror could have found it credible. He points to L.B.'s history of lying to avoid consequences and emphasizes that neither L.B.'s mother nor her brothers were aware of the abuse—facts he claims undermine her statement that the abuse would take place when other family members were at home. Bradford also contends the State failed to present any physical evidence to corroborate L.B.'s testimony. He theorizes that L.B. could have learned about the sex acts she described at trial "from anywhere, such as school or from any number of other sources." In sum, Bradford's sufficiency-of-the-evidence challenge is an attack on L.B.'s credibility and lack of corroborating evidence. We reject this attack for three reasons.

First, our supreme court has held that "[a defendant]'s argument that [the child victim]'s testimony is not credible enough to convince a rational fact finder of his guilt beyond a reasonable doubt is unavailing for sufficiency of the evidence purposes." *State v. Donahue*, 957 N.W.2d 1, 11 (Iowa 2021). Although defense counsel's cross-examination of L.B. brought out some inconsistencies, "this does not require the jury to conclude that the victim is not credible or that there is

insufficient evidence to support a guilty verdict." *Sievers*, 20 N.W.3d at 207 (cleaned up). Such "[i]nconsistencies and lack of detail are common in sexual abuse cases." *Donahue*, 957 N.W.2d at 11. Thus, L.B.'s inability to provide an exact timeframe for the abuse or the number of times it occurred is not fatal to the State's case. As an expert witness explained to the jury, "a child's concept of time is very different than an adult's." According to that expert, "a lot of times a child will say, you know, 'a long time ago' and mean yesterday. Or another child could say 'a long time ago' and mean six months ago."

Second, Iowa law has long "rejected the requirement of corroboration for a sex-offense conviction." *State v. Hernandez*, 20 N.W.3d 502, 507 (Iowa Ct. App. 2025). "A sexual abuse victim's testimony alone may be sufficient evidence for conviction." *Donahue*, 957 N.W.2d at 10–11; *see also State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022) ("The victims' testimony itself is sufficient to constitute substantial evidence of [a defendant's] guilt."). L.B. was asked on direct and cross-examination about the truthfulness of her account. And the jury was free to believe or disbelieve her. *Sievers*, 20 N.W.3d at 207.

Third, there *was* physical evidence corroborating L.B.'s testimony. The *My Little Pony* rug that was stained with Bradford's semen substantiates L.B.'s account of seeing "white stuff" come out of her father's penis and drop onto the floor of her bedroom. To try to counter this evidence, Bradford suggested at trial that L.B. carried the rug around the house with her. But L.B., her mother, and the oldest brother testified the rug never left L.B.'s bedroom—a room that Bradford told a detective that he never went into.

In the end, "all of these disputed fact issues were for the jury to resolve, and they did resolve them," adverse to Bradford. *Mathis*, 971 N.W.2d at 519. Because it is not our place to reweigh the evidence or resolve questions of credibility, we reject Bradford's sufficiency challenge. *See id.* ("Appellate review of the jury's verdict is not the trial redux.").

## III.    Iowa Code section 622.31B

We now turn to Bradford's claims based on Bruce's testimony. Generally, hearsay is inadmissible unless it falls within an exception in the rules of evidence or a statute. Iowa R. Evid. 5.802. A recent statutory exception was created by Iowa Code section 622.31B, which took effect July 1, 2022. *See* 2022 Iowa Acts ch. 1095, § 2. This statute provides that in a prosecution for a sex offense against a child, certain evidence "shall be admitted as an exception to the hearsay rule," including "[t]estimony by another concerning an out-of-court statement, whether consistent or inconsistent, made by the victim that is an initial disclosure of an offense charged for physical abuse or a sexual offense against the victim." Iowa Code § 622.31B(2)(b). Among other admissibility requirements for the out-of-court statements, the statute mandates that the child testify at the trial. *Id.* § 622.31B(3)(c).

The court in *Sievers* resolved a question of first impression about what constitutes "an initial disclosure" of abuse under the statute. 20 N.W.3d at 208. That issue is uncontested here.[1] Instead, Bradford challenges the admission of

---

[1] Bradford acknowledges that while the school counselor "was the first person L.B. reported being shown pornography to, it was Ms. Bruce who L.B. first reported the sexual abuse to."

the child protective worker's testimony about L.B.'s out-of-court statements on three other grounds: (1) the statute violates the Confrontation Clause of the Sixth Amendment to the United States Constitution; (2) the statute conflicts with established precedent by permitting bolstering of a witness's testimony; and (3) the district court erred in finding the statements contained sufficient safeguards of reliability as required by section 622.31B(3)(b).

"We review claims of constitutional violations de novo." *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021). However, rulings on the admissibility of hearsay are reviewed for the correction of errors at law. *Sievers*, 20 N.W.3d at 208. "The State, as the proponent of the evidence, bears the burden of proving" the exception in section 622.31B applies. *Id.* (citation omitted).

### A. Confrontation Clause

"The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (alteration in original). This right rests on two key principles: "a preference for face-to-face confrontation at trial and the right of cross-examination." *State v. Newell*, 710 N.W.2d 6, 24 (Iowa 2006) (citation omitted). The fundamental purpose of the clause "is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Craig*, 497 U.S. at 845.

Although the hearsay rules and Confrontation Clause often operate together to protect criminal defendants, there are instances where the

Confrontation Clause excludes evidence that would otherwise be admissible under a hearsay exception. *State v. Castaneda*, 621 N.W.2d 435, 444 (Iowa 2001). Specifically, the Confrontation Clause prohibits testimonial hearsay unless the declarant testifies at trial or the right to confrontation is otherwise sufficiently satisfied. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004). Under these principles, Bradford's confrontation challenge fails from the start.[2]

In *Crawford*, the Supreme Court was careful to "reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [the declarant's] prior testimonial statements."[3] *Id.* at 59 n.9. Because L.B. testified at trial—as required by Iowa Code section 622.31B(3)(c)—and was subject to cross-examination, there is no Confrontation Clause issue. *See id.*; *State v. Tompkins*, 859 N.W.2d 631, 640 (Iowa 2015). Bradford acknowledges this problem, but he argues that cross-examining "a third-party witness about someone else's statements . . . is an insufficient substitute for one's right to confrontation." The trouble with this argument is that the "Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Tompkins*, 859 N.W.2d at 640 (quoting

---

[2] Bradford seems to assert both a facial challenge and an as-applied challenge to section 622.31B, arguing that it is unconstitutional as written and as applied. *See State v. Woods*, 23 N.W.3d 258, 263 n.2 (Iowa 2025) (distinguishing between the two). While the State takes issue with how Bradford's challenges are framed, we "need not dwell on the distinction" between the two because section 622.31B is constitutional as applied to the facts of Bradford's own case. *Id.* (noting that a facial challenge "requires a defendant to establish that no set of circumstances exists under which the Act would be valid" (cleaned up)).

[3] We assume without deciding that L.B.'s statements to the child protective worker were testimonial.

*United States v. Owens*, 484 U.S. 554, 559 (1988)). Bradford was afforded that opportunity. Accordingly, his Confrontation Clause claim fails.

### B.     Impermissible Bolstering

Bradford next argues that admitting L.B.'s statements through the child protective worker's testimony "constituted impermissible bolstering" under our supreme court's decision in *State v. Elliott*, 806 N.W.2d 660 (Iowa 2011).[4] The court in *Elliott* was concerned with whether the erroneous admission of hearsay evidence prejudiced the defendant's substantial rights. 806 N.W.2d at 672–73. It concluded that because "the outcome of the case depended entirely on the credibility of" three witnesses who admitted lying to police, "it is evident the sole purpose the State could have had for introducing [the] hearsay testimony was to bolster" those witness's credibility, which prejudiced the defendant. *Id.* Thus, the evidentiary error in that case was grounds for a new trial. *Id.* at 675.

Unlike *Elliott*, the State's entire case did not turn on L.B.'s credibility; instead, the State also presented forensic evidence matching Bradford's DNA profile to the semen found on the *My Little Pony* rug. And, as discussed below, the hearsay evidence was properly admitted under section 622.31B. Because we need not reach the question of prejudice where hearsay is properly allowed, the court's discussion in *Elliott* about impermissible bolstering does not apply here.

### C.     Sufficient Safeguards of Reliability

Section 622.31B(3) establishes a three-part test to determine the admissibility of third-party testimony regarding a child's out-of-court statement:

---

[4] We elect to bypass the State's error-preservation concern and reject this claim on its merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

(1) the adverse party must be notified of the intent to offer the statements; (2) the court must find that the timing, contents, and circumstances surrounding "the statement provide sufficient safeguards of reliability," and (3) the declarant is a person with an intellectual disability, a cognitive impairment, a developmental disability, or a child. Iowa Code § 622.31B(3)(a)–(c). Bradford contests the second element, arguing that the district court erred in determining that the outcry testimony satisfied the statutory reliability requirement.

Bradford first points to the timing of the disclosure, highlighting that L.B. referred to the abuse in the past tense and could not recall the last time it occurred. He argues this undermines the reliability of her statements to the child protective worker. Bradford also focuses on perceived inconsistencies in the content of the child's statements. Finally, he questions whether L.B.'s statements were improperly prompted by adults investigating the allegations.

The district court rejected these arguments, finding:

> The child's first statement was made at a time when she was being questioned about sexual information that the child had. She then stated that she learned the sexual gestures from videos and/or photos shown to her by the Defendant. The content of the remainder of her initial disclosures came in response to open-ended, non-leading questions asked to her by Sadie Bruce. Further, the questions were not fashioned to prompt the child to fabricate allegations of sexual abuse. The child provided fairly detailed allegations of sexual abuse perpetrated by the Defendant including a description of ejaculate from the Defendant and his name for it. Such details should have been beyond the knowledge of a child of eleven years. During the deposition, the child was questioned regarding how many naked males she had seen and she testified that she had not seen anyone other than the Defendant to gain such knowledge. Additionally, the child has maintained her allegations and has not recanted. The Court finds that the statements provide sufficient safeguards of reliability.

We agree and affirm the district court's finding that the outcry testimony satisfied the statutory reliability requirement.

## IV.    Iowa Code section 915.38

Finally, Bradford claims that the district court erred in prohibiting his presence in the courtroom during L.B.'s testimony under Iowa Code section 915.38,[5] which codifies the Sixth Amendment right to confront witnesses. *See Craig*, 497 U.S. at 860 (finding the Federal Constitution does not prohibit the use of "a one-way closed circuit television procedure for the receipt of testimony by a child witness in a child abuse case").

We review the court's application of section 915.38 "for correction of errors at law.  Under this standard of review, we are bound by the district court's well-supported factual findings but not its legal conclusions."  *State v. Gomez Medina*, 7 N.W.3d 350, 356 (Iowa 2024) (cleaned up).  To the extent Bradford is arguing "that the Sixth Amendment could provide more protection than the statute," we review that claim de novo.[6]  *Hernandez*, 20 N.W.3d at 510 (citation omitted).

---

[5] Although the statute provides that the minor will testify outside the courtroom through closed-circuit equipment when its requirements are met, Iowa Code § 915.38(1)(a), the parties agreed to deviate from this procedure and have L.B. testify in the courtroom while Bradford sat in another room.  This procedure is not challenged on appeal.

[6] While this appeal was pending, the Iowa Supreme Court decided *State v. White*, 9 N.W.3d 1, 9 (Iowa 2024), which held that the Iowa Constitution was violated when two child witnesses were allowed to testify at trial from the judge's chambers through a one-way closed-circuit television system.  Even though he did not raise a state constitutional argument in the district court proceedings, Bradford's reply brief invokes the court's decision in *White* to argue that his confrontation rights under article I, section 10 of the Iowa Constitution were violated.  Because Bradford "did not raise or obtain a ruling on his state-constitution claim of error," and because he raises this issue for the first time in reply, we grant the State's motion to strike that portion of his reply brief.  *See Hernandez*, 20 N.W.3d at 509 (finding the defendant's confrontation argument under the state constitution was

Iowa Code section 915.38(1)(a) provides:

> Upon its own motion or upon motion of any party, a court may protect a minor, as defined in section 599.1, from trauma caused by testifying in the physical presence of the defendant where it would impair the minor's ability to communicate, by ordering that the testimony of the minor be taken in a room other than the courtroom and be televised by closed-circuit equipment for viewing in the courtroom. However, such an order shall be entered only upon a specific finding by the court that such measures are necessary to protect the minor from trauma. Only the judge, prosecuting attorney, defendant's attorney, persons necessary to operate the equipment, and any person whose presence, in the opinion of the court, would contribute to the welfare and well-being of the minor may be present in the room with the minor during the minor's testimony. The judge shall inform the minor that the defendant will not be present in the room in which the minor will be testifying but that the defendant will be viewing the minor's testimony through closed-circuit television.

As we recently explained in *Hernandez*, this "statutory text, using nearly identical language to" the Supreme Court's decision in *Craig*,

> implements that case's requirement the court find: (1) closed-circuit testimony is "necessary to protect the welfare of the particular child witness who seeks to testify"; (2) "it is the presence of the defendant that causes the trauma," not "the courtroom generally"; and (3) that the trauma or emotional distress inflicted on the child "is more than *de minimis, i.e.*, more than mere nervousness or excitement or some reluctance to testify," such that it impairs the child's ability to communicate.

*Hernandez*, 20 N.W.3d at 510 (quoting *Craig*, 497 U.S. at 855–56). Bradford argues the State failed to prove the last two requirements. We disagree.

At the hearing on the State's motion, L.B.'s therapist for the past year testified that it would be traumatic for the child to testify in front of Bradford. Although this court has recognized that manifestations of trauma "are not limited

---

not preserved where it was not raised in or decided by the district court); *Villa Magana v. State*, 908 N.W.2d 255, 260 (Iowa 2018) ("Generally, we will not consider issues raised for the first time in a reply brief.").

to outward expressions of fear," *id.* at 512, those expressions were present here. The therapist explained that L.B. becomes visibly afraid at the mention of Bradford. She described how L.B. would cry when asked questions about Bradford, and "quite often she will curl up in the fetal position, put her head down, and sometimes change the subject." When asked to clarify whether "afraid" meant more than being nervous, the therapist answered,

> No, she's—she's scared. She has said, "I don't want to be in the same room with him."
> Q. So it's more than nervous, it's more than just being excited and reluctant to tell others about what happened to her? A. Yep.

The therapist testified that in her professional opinion, forcing the child "to testify in court in front of her father [would] cause her serious emotional distress, such that she could not . . . reasonably communicate." She explained that L.B. "doesn't understand this whole system. She thinks if somebody is going to go to jail, it is either Dad or her. So if she is in trouble, in her words, then she's going to go to jail if she doesn't say whatever . . . she believes people want to hear." The therapist testified that if L.B. were forced to testify in front of her father at trial, "she would regress, and I believe she would tell what she thinks her dad wants to hear. And I believe that she might actually be untruthful for fear of herself going to jail." The therapist noted that "the closer we get to the court date the more you can see and feel the trauma . . . that she's experienced. She becomes reluctant to talk. She becomes afraid to talk."

We have found similar "difficulties in communication due to an abuse victim's 'detached state' were sufficient to satisfy the statute and *Craig*." *Id.* at 513 (citing *State v. Bailey*, No. 01-0955, 2002 WL 31308238, at *2–3 (Iowa Ct. App.

Oct. 16, 2002)). "So too for the risk an abuse victim 'might potentially shut down' when facing their abuser in court." *Id.* (citing *State v. McDonnell*, No. 08-0798, 2009 WL 1492839, at \*3–5 (Iowa Ct. App. May 29, 2009)). As in *Hernandez*, we conclude the district court's fact-findings were supported by substantial evidence and our precedent under Iowa Code section 915.38. *Cf. State v. Richards*, No. 07-0916, 2008 WL 2042615, at \*3 (Iowa Ct. App. May 14, 2008) (affirming the district court's ruling that denied the State's request for closed-circuit testimony where an expert provided only general testimony "about what children who are abused go through" (emphasis removed)). We accordingly affirm the court's closed-circuit ruling.

## V. Conclusion

We affirm Bradford's conviction for second-degree sexual abuse, finding substantial evidence supported the jury's guilty verdict. We reject his constitutional challenge to Iowa Code section 622.31B and find the State satisfied the statute's reliability requirement. The State also met its burden to establish the statutory and constitutional requirements to allow the minor victim to testify outside Bradford's presence at trial.

**AFFIRMED.**